PITTSBURG REDUCTION COMPANY *v.* HORTON.

Opinion delivered November 2, 1908.

1. NEGLIGENCE—LIABILITY FOR PROBABLE CONSEQUENCE.—When a person has violated a duty imposed upon him by the common law, he is liable to every person whose injury is the natural and probable consequence of the misconduct. (Page 579.)

2. SAME—INTERVENING CAUSE.—If, subsequent to the original negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the injury, the original negligence is too remote. (Page 579.)

3. SAME—LIABILITY FOR EXPLOSION.—Where defendant company's foreman negligently placed some dynamite caps where they were liable to be picked up by children passing by, and a school boy picked up one of the caps, took it home and with his parent's knowledge and permission carried it to school, whereupon plaintiff, one of his associates, was injured by its explosion, the intervening negligence of the parent of the child who found the cap relieved defendant company and its foreman from liability for the resulting injury. (Page 580.)

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; reversed.

## STATEMENT BY THE COURT.

This was an action brought by John A. Horton, by his next friend, S. A. Horton, against the Pittsburg Reduction Company and C. C. Brazil to recover damages for an injury sustained by him caused by the explosion of a dynamite cap in his left hand.

The Pittsburg Reduction Company was engaged in mining bauxite at the town of Bauxite in Saline County, Arkansas. Its plant consisted of. mineral--land, houses, sheds, machinery and spur tracks from the railroad, etc., which were used in its business. Its plant was near the public school house, and a large proportion of the school children of the neighborhood passed by its sheds, machine and tool houses and spur railroad tracks in going to and from school.

Appellant company owned the land surrounding and upon which its shops, machine and tool houses and spur railroad tracks were situated. It also had a number of tenement houses on said lands for dwelling houses for its employees.

The spur railroad track passed between its main shed and tool house, and very close to the tool house on the east. There was no inclosure around the sheds, machine and tool houses or spur track. There was a path along the spur track, which was habitually used by the children of the neighborhood in going to and from school.

This was the condition of affairs at the time of the accident, and such condition was known to the appellant company. The cap which did the damage was picked. up by Charlie Copple, a boy about 10 years of age, at the edge of the spur track near the end of the tool house of appellant company. The caps were in a tin snuff box, and were made of brass or copper. They were very much like small metal cartridges, and appeared to be empty except of dirt. The Copple boy picked them up on his way home from school and carried them home. He lived with his parents about ¼ of a mile distant. His father was an employee of another company, which had a plant for mining bauxite near that of appellant company. Charlie Copple kept the caps at home for about one week, playing on the floor with them in the presence of his parents. When he would leave them on the floor, his mother said she would pick them up. She said she did not know what they were. She said that Charlie Cop-

ple had them there in the house, and that she supposed her husband noticed him with them. The father denied knowing that his boy had the caps until he heard of it after the accident happened. Charlie Copple said that when not playing with them they were left on the clock shelf. About one week after he had found them, Charlie carried them to school and traded them to Jack Horton for some writing paper. Jack Horton was a boy 13 years old. He was in the school house at the time he was hurt. He said he thought it was a shell of a 22 cartridge that had been shot. That he was picking the dirt out of it with a match when it exploded, and tore up his hand. His hand was torn so that it had to be amputated.

There is a great deal of testimony relative to the manner by which the caps came on the spur track, where Charlie Copple picked them up, but the view we have taken of the case renders it unnecessary to abstract it, except to say that it may be assumed that appellant C. C. Brazil, the general foreman of appellant company, threw them there from the tool house, thinking they were empty.

There was a jury trial and a verdict against both appellants for $2,000. They have appealed to this court.

*Mehaffy, Armistead & Williams,* and *Murphy, Coleman & Lewis,* for appellants.

There is no causal connection between the alleged negligent act of Brazil in throwing the caps where they were found and the injury complained of, and the question of remoteness was for the court to decide. 171 Mass. 543; L. R. 10 Q. B. 111, 112; 124 Fed. 113; 81 Wis. 231. A party may be negligent in the performance of some duty owed to the person injured, and yet no liability attach unless such negligent act is the *proximate cause* of the injury. The injury must be the natural and probable consequence of the negligent act. 29 Cyc. 492; *Id.* 496; 41 N. Y. S. 1009; 1 L. R. Exchequer Cases, 239; 150 Mass. 515; Bacon's Maxims, Reg. 1; 66 Ark. 70; Wharton on Neg. § 134; 185 Mass. 315; 81 Wis. 239; 43 Atl. 539; 50 N. W. 135; 171 Mass. 536; 211 Pa. St. 17; 71 Kan. 475; 133 Cal. 214; 83 Ill. App. 481; 164 Ind. 189; 108 Ia. 321; 103 Mass. 507.

*W. R. Donham* and *Wood & Henderson,* for appellee.

There is no evidence to warrant the conclusion that the caps passed from the custody and possession of the Copple boy from the time he picked them up on the spur track until he traded them, the cap to plaintiff. The explosion of the cap which injured plaintiff was, therefore, in a continuous sequence, unbroken by any new efficient cause, from the negligent act of Brazil in throwing away the caps. 70 Ark. 331; 12 N. E. 451; 60 L. R. A. 793; 8 L. R. A. 464; 51 Am. Rep. 154; 70 Pac. 64; 42 Am. Rep. 508; 81 Ky. 638; 57 L. R. A. 561; 70 *Id.* 503; 60 *Id.* 158; 152 U. S. 262, 38 L. Ed. 434; 17 Wall. 657.

HART, J., (after stating the facts). It is a well settled general rule that when a defendant has violated a duty imposed upon him by the common law he should be held to be liable to every person injured whose injury is the natural and probable consequence of the misconduct. Hence, in our consideration of this case, we are first met with the proposition of whether or not the negligence of appellants in leaving the dynamite caps near the spur track, which was frequented by children, was the proximate cause of the injury. As was said by this court in the case of *Martin* v. *Railway Co.,* 55 Ark. 510, and later approved in the case of *James* v. *James,* 58 Ark. 157, there must be a direct connection between the neglect of the defendant and the injury. That its connection must be something more than one of a series of antecedent events without which the injury would not have happened.

It is a well settled general rule that if, subsequent to the original negligent act, a new cause has intervened, of itself sufficient to stand as the cause of the injury, the original negligence is too remote. The difficulty arises in each case in applying the principle to a given state of facts.

Counsel for appellee mainly rely upon the case of *Harriman* v. *Pittsburgh, C. & St. L. R. Co.,* 12 N. E. (Ohio) 451, to establish their contention that the negligence of the appellants in leaving the caps on the spur track was the proximate cause of the injury. Other cases are cited by them to sustain their position, but they chiefly turn upon the question of the contributory negligence of the plaintiff.

The facts and the gist of the holding of the court in the

Harriman case are fairly stated in the syllabus, which is as follows:

"A train of cars, passing over some signal torpedoes, left one unexploded, which was picked up by a boy nine years old at a point on the track which he and other children, in common with the general public, had long been accustomed to use as a crossing, with the knowledge and without the disapproval of the company. He carried it into a crowd of boys near by, and, not knowing what it was, attempted to open it. It exploded, and injured the plaintiff, a boy 10 years of age. *Held,* that the act of the boy who picked up the torpedo was only a contributory condition, which the company's servants should have anticipated as a probable consequence of their negligence in leaving the torpedo where they did, and that that negligence was the direct cause of the injury suffered by the plaintiff."

There the child did a perfectly natural thing for a boy to do. He found what appeared to be an attractive plaything. He at once carried it over to his playmates, and exhibited it to them. He then began to try to open it, so that they might learn what it contained. In doing this the explosion occurred which caused the injury. The result was the natural sequence of antecedent events, and ought to have been anticipated by any person of ordinary care and prudence. In the present case the facts are practically undisputed. Charlie Copple's father was an employee of a company engaged in a similar business to that of appellant company. Naturally, his avocation and the proximity of his residence to the mines made both himself and his wife familiar with the nature of explosives. True, Mrs. Copple says that she did not know what the shells contained, but she did know that they were shells for some kind of explosives, that her son brought them home, and that he played with them. She admits that when he would leave them on the floor she would pick them up and lay them away for him. This continued for a week, and then, with her knowledge, he carried them to school. Her course of conduct broke the causal connection between the original negligent act of appellant and the subsequent injury of the plaintiff. It established a new agency, and the possession by Charlie Copple of the caps or shells was thereafter referable to the permission of his parents, and not to the original taking. Charlie Copple's

parents having permitted him to retain possession of the caps, his further acts in regard to them must be attributable to their permission, and were wholly independent of the original negligence of appellants.    This is but an application of the well established general rule that, to charge a person with liability for damages, the negligence alleged must be found to have been the proximate cause of the injury to the plaintiff.

This case has given us much concern, and we have examined many cases illustrating the application of the general rule. It is useless to review them; for most of them recognize and approve the general rule, and as the facts in each case are different a review of them would add nothing to the opinion.    The leading cases on the subject are cited in the respective briefs of the attorneys in this case.

As above stated, the evidence speaking on the question.is undisputed, and, having determined that the ·intervening act of Charlie Copple's parents in permitting him to retain in his possession the caps broke the causal connection between the original wrongful act of appellants and the subsequent injury of the plaintiff, there is nothing to submit to the jury.

The judgment is therefore reversed, and the cause dismissed.

WOOD, J., not participating.