WESTERN UNION TELEGRAPH COMPANY *v.* FORT SMITH
BODY COMPANY.

Opinion delivered February 27, 1928.

1. TELEGRAPHS AND TELEPHONES—CONTRIBUTORY NEGLIGENCE.—In an action for damages caused by error in the transmission of a telegram to plaintiff's agent, whether the latter was negligent in attempting to interpret an unintelligible message, without asking the sender for confirmation, *held* for the jury.

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—The jury's finding on a question of fact, properly submitted to them, cannot be disturbed by the Supreme Court.

3. TELEGRAPHS AND TELEPHONES — CONTRIBUTORY NEGLIGENCE. — Whether the plaintiff was justified in acting on a telegram to an agent as interpreted by the latter in answer to plaintiff's inquiry, *held* for the jury in an action against the telegraph company for damages by error in the transmission of such message.

4. TELEGRAPHS AND TELEPHONES — CONTRIBUTORY NEGLIGENCE. — Whether plaintiff, acting on a telegram as interpreted by its agent, was guilty of contributory negligence, depends on whether the plaintiff acted as a person of ordinary prudence would have acted under the same circumstances.

5. TELEGRAPHS AND TELEPHONES—INSTRUCTION AS TO CONTRIBUTORY NEGLIGENCE.—In a seller's action against a telegraph company for damages by error in the transmission of the buyer's telegram to the seller's agent, an instruction that plaintiff cannot recover if the jury believe that plaintiff's agent was negligent in not asking the buyer to confirm the message on receiving plaintiff's message asking for information, because the agent's first message to plaintiff was not clear, correctly submitted the question of the agent's negligence.

6. TELEGRAPHS AND TELEPHONES—SUFFICIENCY OF EVIDENCE—DAMAGES.—Evidence *held* sufficient to sustain a verdict of the seller, suing a telegraph company for damages resulting from the former's shipment of more than the number of automobile bodies ordered by the buyer in consequence of defendant's error in transmitting a telegram directing shipment.

Appeal from Sebastian Circuit Court, Fort Smith District; *J. Sam Wood,* Judge; affirmed.

*Francis R. Stark, Rose, Hemingway, Cantrell & Loughborough* and *Pryor, Miles & Pryor,* for appellant.

*James B. McDonough,* for appellee.

Mehaffy, J.   The appellee, Fort Smith Body Company, engaged in the manufacture and sale of bodies for automobiles and trucks, etc., in the city of Fort Smith, Arkansas, brought suit in the Sebastian Circuit Court against the appellant, Western Union Telegraph Company, alleging that the Knapp Motor Company of Donna, Texas, sent a wire to appellee's agent, George F. Hall, at San Antonio, Texas. The following is a copy of the telegram sent:

"Ship rush freight twelve special wide express with stock rack open cab and windshield and six open cabs and windshields only at same price terms and so forth as stipulated in our order dated May nineteen your number ten five one. Stop. Wire acceptance. Signed, Knapp Motor Company."

The message was addressed to George F. Hall, San Antonio, Texas. The appellant, in transmitting the message from Donna, Texas, to San Antonio, changed the letter "y" to the letter "f" in the eighth word from the end, making it read "four" instead of "your," so that, when George F. Hall received it at San Antonio, Texas, it read as follows: "Ship rush freight twelve special wide express with stock rack open cab and windshield and six open cabs and windshields only at same price terms and so forth as stipulated in our order dated May nineteen four number ten five one. Stop. Wire acceptance. Signed, Knapp Motor Company."

Hall sent the massage from San Antonio, Texas, to Fort Smith, Arkansas, addressed to the Fort Smith Body Company, as it was received by him, but not the message that was sent by the Knapp Motor Company. In other words, the Western Union Telegraph Company, in transmitting the message to Hall, changed the letter "y" to the letter "f," and made it read "four" instead of "your," and it was received by Hall and transmitted to the Fort Smith Body Company just as the Western Union Telegraph Company had transmitted to Hall from the Knapp Motor Company.

The Fort Smith Body Company, on receipt of the telegram, telegraphed Hall as follows: "We do not understand the last sixteen words of your telegram of the twenty-seventh. Please explain more fully."

Hall then wired the Fort Smith Body Company as follows: "Wants twelve three in one jobs complete six extra cabs also four number ten and five number one at former prices terms."

The Fort Smith Body Company thereupon began the manufacture of the articles and shipped them to the Knapp Motor Company on August 8. On July 28 Hall wrote the Knapp Motor Company at Donna, Texas, telling them what he had done and what he had ordered. The Knapp Motor Company, on July 30, wrote the following letter to Hall at San Antonio, Texas:

"Our telegram calls for 13 of the '3 in 1' and 6 extra cabs at same price, terms and guaranteed freight rate, as previous carload we bought from you. We do not want the other bodies you mention in your letter dated July 28.

"Kindly acknowledge acceptance of this order and when shipment will go forward by wire at once.

"Yours very truly,
"Knapp Motor Company."

Hall denied receiving the letter above set out.

The plaintiff asked for freight in transmission on the articles eroneously sent, because of defendant's errors, $143.06; return freight on same articles $151.04; telegrams caused by the error of the defendant relating to said shipments, $16.71; demurrage on the shipment due to defendant's negligence, $13.00. It also asked damages in the following sums:

"Loss of use of the articles shipped during the
    time they were detained away from the plain-
    tiff ...................................................................................$50.00

"Loss of profits in loss of opportunity to sell said
    articles during the time that they were out of
    the possession of the plaintiff by reason of
    defendant's negligence ............................................... 50.00

"Damage to the articles which were shipped by
  reason of the transportation to and from the
  point of destination ........................................................    40.00
"Making a total damage claimed by the plaintiff
  of ....................................................................................................$463.81

The defendant answered, denying liability, and alleg
ing the proximate cause of the damage was Hall's negli-
gence in attempting to construe the telegram which he
received from the Knapp Motor Company, when the
appellee was unable to determine what it meant, and then
permitting the goods to be shipped without confirma-
tion.

Second, it contended that it was not liable to the
Fort Smith Body Company on a mistake in the original
message from the Knapp Motor Company, because the
Fort Smith Body Company is the undisclosed principal
of the sendee of that message, and no action can be main-
tained by the undisclosed principal of a sendee of a
telegram.

Third, that the messages were interstate messages,
and no claim was presented in writing within 60 days
after the messages were filed with the company for trans-
mission.

The jury returned a verdict for $310.81. The verdict
was made up of the following items:
Freight transmitting bodies not ordered......................$143.06
Return freight ................................................................................ 151.04
Cost of telegrams caused by defendant's negli-
  gence ................................................................................................ 16.71

And found against the plaintiffs on the other items
in the complaint.

F. E. Knapp, manager of the Knapp Motor Com-
pany of Donna, Texas, testified that he desired to buy
certain bodies and parts for automobile trucks on July
27, 1923; that he delivered to the appellant, Western
Union Telegraph Company, at Donna, Texas, a telegram
addressed to George F. Hall, and reading as follows:
"Ship rush freight twelve special wide express with
stock rack open cab and windshield and six open cabs

and windshields only at same price terms and so forth, as stipulated in our order dated May nineteenth your number ten five one. Stop. Wire acceptance.''

The message was signed ''Knapp Motor Company''; that the bodies which he desired were extra wide, with high side-racks, and that the cabs were open; that the message was sent collect; that, later on, he received the articles ordered in the telegram along with other articles which he did not order; that there were other automobile bodies in the car than those ordered, and that he declined to receive the other bodies, but did accept the goods ordered, and shipped back the other goods; that the matter had been settled between him and the Fort Smith Body Company. He testified that George F. Hall wrote the Knapp Motor Company a letter, dated July 28, 1923, about this order, and that he answered Hall's letter on July 30, explained in detail what the telegraphic order called for, and that the Fort Smith Body Company did not call upon the Knapp Motor Company for a confirmation of the order and that Hall did not wire them for confirmation of the order. He testified that his records showed that this shipment was made from Fort Smith on August 8, 1923, and that on July 30, 1923, he had written Hall.

Hall testified that he was a traveling salesman, and was agent of the Fort Smith Body Company in the year 1923; that on July 27, 1923, he received in San Antonio a message from the Knapp Motor Company at Donna, and that he immediately transmitted it in the same language to the Fort Smith Body Company at Fort Smith, Arkansas, by telegram. The telegram has already been set out above. That he immediately received a telegram from the Fort Smith Body Company as follows:

''We do not understand the last sixteen words of your telegram of the twenty-seventh. Please explain more fully.''

And that he then sent the following message to the Fort Smith Body Company:

"Wants twelve three in one jobs complete extra cabs also four number ten and five number one at former price terms."

He testified that in sending the last message he relied upon the message which he had received through the Western Union Telegraph Company from Donna, and that all messages were sent over the lines of the Western Union Telegraph Company; that he, at the time, was the sales agent of the Fort Smith Body Company in San Antonio, Texas, selling the products of the Fort Smith Body Company generally in Texas; that he did not change the word "your" to the word "four," but that the message from Donna, Texas, came to him with the word "four" used; that he naturally had no knowledge that the original message read "your" instead of "four"; that he did not know that the agent of the Western Union Telegraph Company at San Antonio knew the kind of business that he was transacting, and that it was not generally known in San Antonio that he was representing the Fort Smith Body Company; that he transmitted over the Western Union Telegraph Company to the Fort Smith Body Company at Fort Smith the exact language of the message which he received from Donna. He had been appointed agent of the Fort Smith Body Company in writing, but that he was unable to locate the writing; that he received a 10 per cent. commission on all sales made; that, at the time of receiving the telegram from the Knapp Motor Company, he was not engaged in business for himself, buying and selling automobile bodies, and that he did not act as a broker in receiving the order from the Knapp Motor Company, but that he was the agent of the Fort Smith Body Company. When he received the message from the Fort Smith Body Company, that they did not understand the last sixteen words of his telegram, he sent his answer to the Fort Smith Body Company, giving the definite number of bodies and cabs that the Knapp Motor Company wanted, without asking the Knapp Motor Company for a confirmation by wire, but undertook to interpret their mes-

sage himself; that he could not give the name of any agent that handled any of the messages; that the population of San Antonio was more than 168,000 people.

Ben B. Johnston testified that he was president and general manager of the Fort Smith Body Company; had quite a business, extending from the Mississippi River to the Pacific Coast, and that the sales manager received and wrote up the orders; that when the message came from Hall on July 27, Mr. Walker, the sales manager, brought it in to witness, and stated that he did not understand the message; that they read it over together, and neither of them understood it, but that it was not a collect message, and they received it, and he advised Mr. Walker that the thing he had better do was to wire Hall to clarify the message; so they sent a message to Hall, and Hall wired back. The original message has been introduced and marked Exhibit A. The message was not exactly clear to him. The Fort Smith Body Company had previously shipped to the Knapp Motor Company their assemblies No. 10 and assemblies No. 1 in carload lots, and had naturally assumed that they wanted four No. 10 and five No. 1. He testified to the message sent to Hall and as to the receiving of the message from Hall. Upon getting Hall's last telegram, they shipped the goods mentioned therein. The day following the shipment they received their first notification that there was anything wrong with the shipment. The railroad company had received the car, and it was gone, and there wasn't anything else to do but to wait; that the shipment was made on August 8, 1923; that between the date of the telegram, July 28, and the 8th of August, there was no knowledge on his part that there was any error in the telegram; that they relied on the telegram given them by the Western Union Telegraph Company from Hall as stating the goods that the Knapp Motor Company wanted; that they acted on that message and made the shipment; that on August 9 they received a wire from Hall as follows: "Knapp wires ordered only sixteens and extra cabs, and will not accept balance. Evidently original order misunderstood by me. Geo. F. Hall."

At the time of receiving this, the shipment was already on its way; the goods got to Donna, Texas, and they received a notice that the Knapp Motor Company had refused to receive them, for the reason that there were more bodies in the car than ordered; that they ordered the extra bodies shipped back to Fort Smith; that the extra freight by reason of the error was $143.06 going and $151.04 returning; that they were out $16.71 in telegrams, $13 demurrage; that they were shipped on August 8, and they did not get them back until September 11. Hall was the agent of the Fort Smith Body Company; that the date of his first written communication to the Western Union Telegraph Company about this claim was on October 13; no written claim had been filed within 60 days, but he wrote the Western Union Telegraph Company a letter with reference to the claim on October 13, 1923.

A. W. Avery testified that he was shipping clerk for the Fort Smith Body Company, and that these bodies were shipped to Donna, Texas, on August 8.

Plaintiff introduced, over the objection and exception of the defendant, an assignment from the Knapp Motor Company of any interest it might have in the litigation, and also an assignment of George F. Hall of any interest he might have in the litigation. The assignment was in the usual form, assigning to the Fort Smith Body Company the right to bring and maintain a suit, if need be, for any claim that George F. Hall might have against the Western Union Telegraph Company. The same is true of the Knapp assignment.

Hettie M. Salisbury testified for the appellant that she was the manager and operator of the Western Union Telegraph Company at Donna, Texas; that the original message from the Knapp Motor Company to George F. Hall was transmitted from the Donna office on July 27; that it was a day letter, and sent collect; that it was not a repeated message, and that she personally transmitted the message; that the message was exactly as Knapp testified, with the word "your" instead of the word

"four" in it; that the message was relayed at Brownsville, Texas, to San Antonio.

Fred Ward testified that he was manager of the Western Union Telegraph Company at Fort Smith; that the first time that Mr. Johnston of the Fort Smith Body Company called on him with reference to these telegrams was on October 8; that the first letter written was October 22.

Appellant then introduced the rules, as approved by the Interstate Commerce Commission, with reference to the acceptance and transmission of messages by telegraph. Among other rules is the following: "The company will not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission."

The court thereupon, at the request of the plaintiff, instructed the jury as follows:

"1.   If the jury find from the evidence that the plaintiff received from its agent, George F. Hall, the telegram set up in the complaint, and if that telegram was based upon a telegram from the Knapp Motor Company to George F. Hall, and if the latter telegram was sent by the defendant, and if said latter telegram was erroneously sent, and if the said telegram transmitted by the defendant from the Knapp Motor Company to George F. Hall called for different articles from the telegram actually written and delivered to the defendant by the Knapp Motor Company, and if George F. Hall, in sending the telegram to the plaintiff, relied upon the telegram received by him from the Knapp Motor Company as a true telegram, and if George F. Hall sent the telegram to the plaintiff, and if the plaintiff, relying upon the information received in the telegram, shipped different articles other than those ordered by the Knapp Motor Company, then, and in that event, the plaintiff is entitled to recover whatever reasonable damages, if any, it suffered by reason of the error or mistake of the defendant, if there was one, in sending the erroneous telegram from the Knapp Motor Company to George F. Hall.

"2. If you find for the plaintiff, the plaintiff will be entitled to recover all direct damage resulting from the mistake, or error, or negligence of the defendant, if there was such mistake, error or negligence, including freight on the articles erroneously sent, because of defendant's errors, if any, and the return freight on said articles, if any, and the extra telegrams caused by the defendant's error, if any, and the demurrage, if any, due to the defendant's negligence."

To the giving of each of said instructions the defendant at the time objected and saved its exceptions.

The court gave the following instructions at the request of the defendant:

"2. You are instructed that, if you believe that the purchaser of these bodies notified George F. Hall, the agent of the Fort Smith Body Company, by letter, that they did not want the extra bodies, in ample time for the bodies not to have been shipped, your verdict must be for the defendant.

"5. If you believe that, when Hall received the message from the plaintiff asking information because Hall's first message was not clear, and that Hall was negligent in not asking the Knapp Motor Company to confirm its message on July 27, to him, then the plaintiff cannot recover."

The court refused to give the following instructions requested by defendants:

"1. You are instructed that, under the law and the evidence, the plaintiff is not entitled to recover, and your verdict must be for the defendant.

"3. You are instructed that, unless you believe that written claim was filed within sixty days from the time the message was filed with the defendant, your verdict must be for the defendant.

"4. You are instructed that, unless the plaintiff proves that the defendant actually knew that George F. Hall was the agent of the plaintiff, there can be no recovery in an error in any message sent by the Knapp Motor Company to George F. Hall."

The court, on its own motion, gave the following instructions:

"The burden of proof.  The court instructs the jury that the burden of proof is on the plaintiff to establish his case by a preponderance of the testimony, and on the * * * to prove his case by a preponderance of testimony.

"Preponderance of evidence.  A preponderance of the evidence means a greater weight of evidence; but this is not to be determined solely by the greater number of witnesses testifying in relation to any particular fact or state of facts.  It means that the testimony on the part of the party on whom the burden rests must have greater weight, in your estimation; have a more convincing effect than that opposed to it.  If, in your opinion, the testimony on any essential point is evenly balanced, then the party on whom the burden rests to prove the same by a preponderance of the evidence must be deemed to have failed in regard thereto."

After the verdict, the defendant filed a motion for a new trial, which was overruled.  Defendant saved its exceptions, and has appealed to this court.

Appellant's first contention is that the court erred in refusing to direct a verdict in its favor at the conclusion of all the evidence, first, because the proximate cause of the damage to appellee was the negligence of Hall, its agent, in attempting to interpret an unintelligible message without asking the Knapp Motor Company for confirmation.

Appellant first calls attention to the *Arkansas Valley Trust Co.* v. *McIlroy,* 97 Ark. 160, 133 S. W. 816, 31 L. R. A. (N. S.). 1020.  That was an action instituted for the recovery of damages for personal injuries sustained by a child twelve years old, and it was caused by the negligent acts of the defendants.  The question in that case was whether the minor, twelve years of age, was guilty of contributory negligence.  The court, however, did not hold that that was a question of law, but it held that it was error for the lower court

to give instructions A and B. Instruction number A given told the jury that, if a person left fire, or other instrumentality attractive to children, unguarded at a place where children are accustomed to go and play, and a child does go to or near such fire or other dangerous instrumentality attractive to children, and is injured, such child can recover damages from all those concerned in leaving unguarded such fire or other dangerous instrumentality attractive to children. And the court held that the leaving upon the premises of a dangerous object attractive to children does not alone constitute the act of negligence; the act of negligence consists in leaving such object under such circumstances that one of ordinary prudence might reasonably expect that a child too young to appreciate the danger would be allured to and attracted thereby.

This instruction did not submit to the jury the question of the contributory negligence of the child, and the court said:

"What might be an act of negligence in leaving such an object or element resulting in attracting thereto a child of a few years of age and too young to appreciate the danger therefrom might not be an act of negligence if it should be reasonably expected that only a child of the age and maturity to fully understand and appreciate the danger from such an object or element should go near thereto, because it would not be reasonably anticipated that a child of sufficient maturity and intelligence to appreciate the danger from fire would go to and play with this dangerous element."

In other words, it was a question of fact that should have been submitted to the jury, whether the negligence of the defendant was the proximate cause of the injury. That is, if it set out fire at a place where children would be attracted, and a child too young to know or appreciate the danger should be burned, the wrongdoer would be liable; whereas a person old enough to know and appreciate the danger would be guilty of negligence himself which would disentitle him to recover, notwithstanding the negligence of the person who set out the fire.

The court also held that instruction B was erroneous and should not have been given, and that told the jury if the evidence showed that the proximate cause of the injury to plaintiff was some voluntary act of hers, and not caused by the defendant's negligence, they should find for the defendant.

Here the court said that, under the circumstances, it became a question of fact for the jury to determine, after taking into consideration the age, intelligence and capacity of the child, as to whether or not she was guilty of contributory negligence. If she was not, then the defendant was liable if it directed her to watch and guard the fire, without giving her proper warning.

In the instant case the question of negligence of Hall was properly submitted to the jury, and the jury's finding on a question of fact properly submitted to them cannot be disturbed by this court.

Appellant next calls attention to the case of *Pittsburg Reduction Co.* v. *Horton,* 87 Ark. 576, 113 S. W. 647, 18 L. R. A. (N. S.) 905. In that case the Pittsburg Reduction Company was engaged in mining at Bauxite, and it owned lands, houses, machinery, spur-tracks from the railroad, etc., which were near a schoolhouse, and a schoolboy about ten years of age, in going along a path near the spur-track, a place habitually used by the children of the neighborhood in going to and from school, picked up some dynamite caps on his way home from school, and carried them home with him. His father was a employee of the company, and he kept the caps at home for about a week, placing them on the floor, in the presence of his parents. When he would leave the caps on the floor his mother would pick them up. About a week after he found the caps he traded them to Jack Horton, a boy about thirteen years of age, and this boy was picking the dirt out of one with a match, when it exploded and tore up his hand. The court said in that case that the carrying of the caps home and playing with them in the presence of his mother there for a week, her course of conduct broke the causal connection between the negli-

gent act of the appellant and the subsequent injury of the plaintiff. That it established a new agency.

We do not think the same principle is involved here. Hall received the message from Knapp Motor Company, but the telegraph company had not sent it as it was given to it, and Hall immediately sent the message received by him to the Fort Smith Body Company. It is said that the appellee, with the exact message before it, refused to act, and was therefore not damaged by the original negligence of appellant.

It is true that appellee did not undertake to fill the order without communicating with Hall, but Hall thought that he understood it, and, after receiving a message from him, the Fort Smith Body Company thought that it understood it. Whether it was justified in acting under the circumstances as it did act is a question of fact properly submitted to the jury. In other words, if the Fort Smith Body Company acted in filling the order as a person of ordinary prudence would have acted under the circumstances it was not guilty of negligence, and was entitled to recover. If it did something that a person of ordinary prudence would not have done under the circumstances, it could not recover. The negligence charged is the negligence of Hall, and, of course, his negligence, if he was negligent, would be the negligence of the Fort Smith Body Company.

Appellant next calls attention to *Manley Manufacturing Co.* v. *Western Union Telegraph Co.,* 105 Ga. 235, 31 S. E. 156. Appellant states that there is no Arkansas case in point, but that this case is in point. But the court in the Manley Manufacturing Company case submitted the question to the jury, telling them, in substance, that if they believed from the evidence that the message received by Manley was unintelligible and ambiguous, and that a reasonably prudent man would not have acted upon it without having it repeated or telegraphing to the sender, plaintiff could not recover, but that if, on the other hand, they believed that a reasonably prudent man would have

acted upon it without having it repeated, plaintiff could recover.

The court, in discussing the case, states that it thinks any sort of diligence would have prevented the damage in that case. The court frequently decides cases upholding the verdicts of juries, when, if the question were submitted to the court, it might find the other way. The question in the Manley case was submitted to the jury, and the court did not hold that it should not have been submitted to the jury.

Appellant next calls attention to the case of *Western Union Telegraph Company* v. *Neill*, 57 Tex. 283, 44 Am. Rep. 589. The question in that case was whether the company could charge half rate and limit its liability. While the court held that the company could limit its liability under the circumstances in that case, it said:

"Whether or not telegraph companies should be held as common carriers, with all their common law liabilities, has been the subject of much discussion and conflicting decisions * * *. If the testimony, however, should show that the failure to properly transmit or deliver a message arose from such misconduct, fraud or want of due care, then it might be very seriously questioned, indeed, whether the same reasons of public policy which prohibit exemption from liability on these grounds would not also prohibit a limitation upon the true amount of damages which should be recovered—telegraphic communication having now become almost a social as well as a commercial necessity, and the want of competing lines giving to the companies greatly the vantage ground over the public."

In *Nusbaum* v. *Western Union Telegraph Co.*, 42 Leg. Int. (Pa.) 16, the message involved was insensible, substituting the word "ober" for "obey." As transmitted, it was meaningless.

The message involved in the case of *Hart* v. *Cable Company*, 86 N. Y. 633, was held by the court to be unintelligible jargon. It did not mean anything.

Appellant calls attention to the rule announced in 37 Cyc. 720, and states that, while the rule is that an undisclosed principal of the sender of a message may recover, and since the undisclosed principal of the sender may sue, a person may, of course, sue where he is the undisclosed principal of both the sender and the sendee, but it is argued that the action cannot be maintained by one who is the undisclosed principal of the addressee alone. Appellant states that this seems to be the almost universal holding of the various courts of the United States.

In the volume of Cyc. referred to by appellant it is stated: "Since the undisclosed principal of the sender may sue, a person may of course sue where he is the undisclosed principal of both the sender and addressee, but it has been held that the action cannot be maintained by one who is the undisclosed principal of the addressee alone." 37 Cyc. 1722. From the cases cited to the above section in Cyc. it appears that the authorities are in conflict.

The learned counsel for both the appellant and appellee have cited and discussed many authorities, but it would serve no useful purpose to review them or cite them here. The authorities are in hopeless conflict on most of the questions involved in this case. The proof clearly shows that the appellant was guilty of negligence in changing the word "your" to "four," and if this change, resulting from the negligence of appellant, caused injury to the appellee, then the appellee was entitled to recover, unless barred by its own contributory negligence. The negligence of the appellant and negligence of appellee were questions of fact to be decided by the jury, and the appellant requested and the court gave the following instruction on the question of the negligence of the agent of appellee: "If you believe that, when Hall received the message from the plaintiff asking for information because Hall's first message was not clear, and that Hall was negligent in not asking the Knapp Motor Company to confirm its message on July 27 to him, then the plaintiff cannot recover." This instruction correctly submitted to

the jury the question of Hall's negligence. If the message had been meaningless, or, as one court said, "unintelligible jargon," appellee could not have recovered, but if the appellee, acting with reasonable care, understood the message with the word "four" instead of "your," and if a person of ordinary prudence would have acted on it, then the appellee was not guilty of negligence. It is simply a question of negligence, and, as we have said, properly submitted to the jury, and the finding of the jury is binding upon this court on questions of fact. The evidence on the questions of negligence and contributory negligence, as well as on the question of damages, were questions of fact, and there was ample evidence to sustain the verdict of the jury.

Finding no error, the judgment is affirmed.