STINSON *v.* STINSON.

4-6671                    159 S. W. 2d 446

. Opinion delivered March 2, 1942.

*H. L. Ponder,* for appellant. ·

*O. C. Blackford,* for appellee.

HUMPHREYS, J. Appellant, Lewis Stinson, and appellee, Marguerite Stinson, were married August 29, 1931, and lived together as husband and wife in Centralia, Illinois, until November, 1939, at which time she ceased to live with him, and they finally separated in August, 1940. To this union two children were born, Irma, now about nine years old, and Charles, now about eight years old. These children are in the care and custody of Lewis Stinson in Centralia, Illinois, where he now resides and where he has resided for about thirty-six years. Lewis Stinson is a carpenter and supports himself and children in plying his trade.

On January 10 or 11, 1941, Marguerite Stinson established her residence in the eastern district of Lawrence county, Arkansas, presumably for the purpose of getting a divorce under our "ninety-day divorce law," commonly so called, same being act 71, acts of 1931, p. 201. This act amends § 3505 of Crawford & Moses' Digest and provides that the plaintiff must prove, but need not allege, "a residence in the state for three months next before the final decree granting a divorce in the action, and a residence of two months next before the commencement of the action."

On March 18, 1941, a little over sixty days after she established her new residence, she filed a suit for divorce against her husband, Lewis Stinson, on the ground of indignities such as rendered her condition in life intolerable.

On the day she filed suit she obtained a warning order for her husband based upon an alleged affidavit stating that her husband was a non-resident of the state of Arkansas, which warning order was published in the manner and for the time allowed by law. There is some question as to whether the alleged affidavit was sworn to by her.

On the same day the suit was filed she obtained appointment of H. W. Judkins, a regular practicing attorney, to notify her husband of the pendency of the suit and the nature thereof. This he did by registered letter which was dated April 19, 1941, and which was received by him late on the afternoon of the 22nd day of April, 1941. Lewis Stinson answered the letter and posted same at the post office the next day, stating that he wanted to appear and defend the suit and requested the attorney to notify him when the suit was or would be set for trial. At the same time he wrote a letter to the chancellor, A. S. Irby, before whom the suit was pending, stating that he wanted to appear and defend the suit and making the same inquiry indicated in his letter to H. W. Judkins. These letters were received by the judge and attorney during the afternoon of the 25th day of April, 1941, or on the 26th day of April, 1941, to which no reply was made, presumably for the reason that a decree of

divorce was granted to Mrs. Marguerite Stinson during the morning of the 25th of April, 1941, after H. W. Judkins had filed his report stating that he had written to Lewis Stinson informing him of the pendency of the suit and the nature thereof. Lewis Stinson, after writing the letters, made arrangements to come to Arkansas, arriving in Walnut Ridge, where the suit was pending, at 4 o'clock, p. m., on April 30, 1941, and after ascertaining that the decree of divorce had been granted, employed an attorney and immediately filed a motion, at the same term of court at which the decree had been rendered, to set the decree aside alleging in the motion the facts set out above and in addition, that no affidavit had been sworn to and filed as a basis for issuing the warning order, that Marguerite Stinson had not resided continuously in the eastern district of Lawrence county, Arkansas, for sixty days before filing her complaint, nor ninety days before securing the decree of divorce and further stating that he had a meritorious defense to the cause of action.

Notice of the filing of this motion was served upon the attorney who represented Marguerite Stinson in the divorce suit, but she had disappeared and did not receive the notice which her attorney had sent her. It seems that she had married again and immediately moved away. Upon a hearing of the motion, in the absence of Marguerite Stinson, the court heard the evidence introduced, including the complaint, the alleged affidavit for the warning order, the warning order, the proof of publication of the warning order, the report of the attorney for the non-resident defendant, and the oral evidence of Lewis Stinson as to the date he received the letter written to him by the attorney for the non-resident defendant, which was the 22nd day of April, 1941, which he answered on April 23, 1941, inquiring of the attorney and the chancellor on what date the case would be set down for trial, stating that he had a meritorious defense to the action, and that he wanted to appear and defend the same; that he came to Arkansas immediately and after finding out that the decree of divorce had been granted, he employed an attorney and filed the motion to

set aside the decree; that he had the children in his custody and that if he had been notified when the case was to be tried, he would have employed an attorney, filed an answer and defended the suit.

H. W. Judkins testified that immediately after his appointment as attorney for the non-resident defendant he left Walnut Ridge on a visit and did not return for about three weeks, and on April 19, 1941, he wrote to Lewis Stinson, and that Lewis Stinson received his letter on the 22nd day of April, 1941, and that in the afternoon of April 25, 1941, or April 26, 1941, he received a letter from Lewis Stinson making inquiry as to when the case would be set down for trial, but that when he received the letter the decree had already been granted to Marguerite Stinson. He further testified that he thought that Lewis Stinson had stated in his letter that he wanted to file a cross-complaint against Marguerite on the ground of adultery.

A Mr. Smith said he saw the letter, and that Lewis Stinson accused his wife of adultery.

The court overruled the motion of Lewis Stinson to set aside the decree for the reason that no notice had been given to Marguerite Stinson that the motion had been filed, to which ruling Lewis Stinson excepted and prayed and was granted an appeal to this court.

This court, in the case of *Wells Fargo & Co.* v. *W. B. Baker Lbr. Co.*, 107 Ark. 415, 155 S. W. 122, quoted from 23 Cyc. 901 as follows: "During the whole of the term, at which a judgment or order is rendered, it remains subject to the plenary control of the court, and may be vacated, set aside, modified or annulled. . . . This is a power inherent in all courts of general jurisdiction and is not dependent upon nor d e r i v e d from the statutes."

And also quoted from the opinion rendered by Mr. Chief Justice FULLER of the Supreme Court of the United States in the case of *Aspen Mining & Smelting Co.* v. *Billings, et al.*, 150 U. S. 31, 44 S. Ct. 4, 37 L. Ed. 986, as follows: "The general power of the circuit court over its own judgments, decrees and orders, during the existence of the term at which they are made, is undeniable,

and an order allowing an appeal is subject to that power, so long as the appeal remains unperfected and the cause has not passed into the jurisdiction of the appellate tribunal.''.

This court approved the quotations above from Cyc. and the Aspen Mining Company case as the correct rule in Arkansas. Courts in this state, having absolute control of their judgments and decrees during the term at which rendered might change, modify or set them aside on their own motion and without requiring the formality of a motion to do so and without any notice whatever to the parties in the case. In the recent case of *The Security Bank of Branson, Missouri*, v. *Speer, ante,* p. 562, 157 S. W. 2d 775, this court ruled, quoting syllabus 2, that: ''Courts have control over their orders, judgments and decrees during the term at which they were rendered and for sufficient cause may, upon application or upon its own motion, modify or set them aside.''

The object of requiring that an attorney be appointed to notify a non-resident defendant of the pendency of a suit is that the non-resident be notified in time to appear and make a defense if he desires to do so. A notice to the non-resident to appear after it was too late to appear would be of no benefit whatever. Before rendering the decree the court should see to it, in cases where constructive service is relied upon, that a non-resident defendant has been notified for a reasonable length of time so that he may appear and defend the case if he desires to do so. In the instant case Lewis Stinson lived at least three hundred miles from Walnut Ridge where the case had been brought and was pending and did not receive notice from the attorney appointed to represent him until on the afternoon of April 22, 1941. He was a working man and could not get away to answer until the morning of the 23rd of April, 1941. He did answer the letter and took the precaution of writing to the court, also, that he wanted to defend the case and inquired of both the attorney and the court as to when the case would be set down. The court had rendered the decree on the morning of the 25th day of April, 1941, but took no action whatever relative to setting the decree

aside, setting the case for trial and notifying the non-resident defendant. We think that immediately upon receiving notice that the defendant wanted to make a defense, the court should have set the decree aside on its own motion. The court had plenary power over the decree and should have exercised it without any formal motion, but certainly should have exercised it when Lewis Stinson filed his motion at the same term of court to set the decree aside showing that he had used due diligence to appear and defend after receiving notice of the pendency of the suit.

As stated above, in all cases where constructive notice is relied upon, the court should, before rendering a decree, ascertain whether notice has been sent to the non-resident defendant in a timely manner in order to permit the defendant to appear and defend the case, especially in this kind of a case, where one spouse comes to this state and establishes a temporary residence in order to procure a divorce under our ''ninety-day divorce law.'' One spouse should not come into this state and obtain a divorce from the spouse left in another state without seeing to it that the non-resident spouse received a notice of the pendency of the divorce suit in time to appear and defend the case if he or she desires to do so. In the instant case the non-resident spouse had only two days notice to appear and defend and was not even notified when the case would be heard. It is enough for one spouse to obtain a divorce within ninety days after establishing a temporary residence in this state, without also permitting him to obtain a divorce before the absent spouse had a reasonable opportunity to appear and defend.

On account of the error indicated the decree is reversed, and the cause is remanded with directions to the trial court to permit appellant to file an answer within a reasonable time to the original complaint and to make defense therein.