HILL *v.* WILSON.

4-8983                                224 S. W. 2d 797

Opinion delivered November 28, 1949.

*Gordon & Gordon* and *S. Hubert Mayes,* for appellant.

*Phil Loh* and *Lynn Wilson,* for appellee.

LEFLAR, J. This is an action for damages brought by four plaintiffs against two defendants for injuries suffered in a collision of three motor vehicles on a public highway.

On April 15, 1948, the three motor vehicles were traveling in a westerly direction, perhaps fifty yards apart, on U. S. highway 64 about two miles west of Morrilton, approaching Point Remove bridge. The front vehicle was a heavy Diesel-powered truck pulling what is called a low-boy, a broad platform on wheels designed for hauling bulky or unwieldy loads that cannot readily be carried on ordinary motor trucks. On the low-boy was a large power shovel, or dragline, with the bucket suspended above and behind the rear of the low-boy. This vehicle and equipment were owned and operated by defendant D. B. Hill. B. A. Kimbrough, Hill's employee, was the driver. The second vehicle was a Hudson passenger car owned and driven by plaintiff J. B. Wilson, then head of the English department at State Teachers

College, Conway. In addition to Wilson, the passengers in this car were his wife, plaintiff Lois Wilson, and plaintiff Mrs. Alice Smith. The third vehicle was a 1½-ton Chevrolet truck heavily loaded with green lumber. It was owned and driven by defendant Julian Snider.

After the Diesel driver, Kimbrough, got on the Point Remove bridge he decided that he would stop his truck in order to be certain that a car coming toward him from the west would be able to pass him on the bridge. This was because his equipage was much wider than an ordinary automobile, extending somewhat across the center line onto the left half of the highway. Kimbrough testified that he slowed down gradually; Mr. and Mrs. Wilson and Mrs. Smith testified that he stopped suddenly, with no observable signals. Mr. Wilson according to uncontradicted testimony then brought his car to a quick stop, or very nearly to a stop, in an apparently safe position some five or ten feet behind the overhanging bucket of the steam shovel. Wilson's car was in good mechanical condition and he had it under proper control at the time. There is no serious contention by defendant Hill that Wilson was guilty of contributory negligence in stopping his car as he did. As Wilson brought his car to a stop, it was struck violently from behind by Snider's truck, and forced forward into the rear end of the low-boy and the power shovel. The effect might be described as accordion-like, as far as Wilson's car was concerned. Mr. and Mrs. Wilson both suffered substantial and painful injuries, and Mrs. Smith received injuries which were extremely serious and required long hospitalization and treatment.

The three injured persons brought action against Hill and Snider as joint defendants. Glenn Smith, husband of Mrs. Alice Smith, joined as a plaintiff also, asking damages for loss of the services, companionship and society of his wife and medical and hospital bills paid on her account. At the trial, after evidence as summarized above, plus undisputed evidence of Glenn Smith's expenditures for medical care and hospitalization for Mrs. Smith, the jury returned verdicts against

defendant Hill in favor of Mr. Wilson for $1,250, Mrs. Wilson for $500, and Mrs. Smith for $12,000, and for defendant Hill in Mr. Smith's suit. A verdict returned for Mr. Wilson against Snider is not involved in this appeal. Judgment was rendered in accordance with the verdicts on November 29, 1948. On February 16, 1949, plaintiff Glenn Smith moved that the judgment against him be set aside. Six days later the Circuit Judge granted Smith's motion. This was during the same term of court at which the trial was held. Defendant Hill appeals on the grounds (1) that there should have been a directed verdict for him in all the cases because the evidence showed in him no negligence that was the proximate cause of the injuries proved and (2) that the Circuit Judge erroneously vacated the judgment in Hill's favor in the Glenn Smith case.

(1) There was ample evidence offered to support the jury's finding that defendant's driver was negligent, and that his negligence was directed toward persons in the vehicles immediately behind him on the highway and others having interests in such vehicles or their occupants. The jury was entitled to believe the plaintiffs' testimony that Kimbrough stopped defendant's truck on the bridge suddenly and without observable signals, under circumstances creating an appreciable risk that vehicles immediately behind it might be piled up on it. If Wilson's car had not been struck from behind but rather, being driven by Wilson with due care, had run into the back of defendant's vehicle because Wilson could not stop it in time to avoid a collision after defendant's sudden stop, the jury could unquestionably have found that the defendant's negligence was the proximate cause of injuries suffered in the collision. The added fact here, which by defendant's claim makes the instant case different from the one supposed, is that Snider's truck, the third vehicle in line, is deemed to have been driven negligently. The argument is that Snider's negligence was a new and independent intervening cause, so unconnected with defendant's prior negligence as to be the sole proximate cause of plaintiffs' injuries.

Negligence in a tort defendant is one thing, and proximate causation as a relation between negligence and injury is a separate and different thing. Yet the two things shade into each other.

Actionable negligence itself is a relational concept. There is no such thing as "negligence in the air." Conduct without relation to others cannot be negligent; it becomes negligent only as it gives rise to an appreciable risk of injury to others. Acts done in a vacant field or by a lone traveler on a highway may not be negligent; the same acts done in a crowded city or in heavy highway traffic may well be negligent. The concept of actionable negligence is relational because an act is never negligent except in reference to, or toward, some person or legally protected interest.[1] In other words, a negligent act is one from which an ordinary prudent person in the actor's position—in the same or similar circumstances—would foresee such an appreciable risk of harm to others as to cause him not to do the act, or to do it in a more careful manner. The jury was clearly justified in finding that defendant, through his driver, was negligent *toward* the plaintiffs.

Defendant contends, however, that this negligence was not the proximate cause of plaintiffs' injuries. If after, or as, plaintiffs' car was brought to a stop behind defendant's truck, a third person had negligently fired a bullet into plaintiffs' car, or had while dynamiting a nearby stump thrown a boulder on plaintiffs' car, or had without stopping driven another car out of a sideroad into plaintiffs' car, the defendant's argument would be easier to sustain. If any such intervention had occurred, it would have been easy to find that it was truly an independent intervening act not aided or risked by defendant's negligent act. Such a wholly independent intervening act could be held to be the sole proximate cause of resultant injuries.

---

[1] *Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339, 162 N. E. 99, 59 A. L. R. 1253. "The ideas of negligence and duty are strictly correlative." *Thomas* v. *Quartermaine*, L. R. 18 Q. B. D. 685, 694. See Pollock, Law of Torts (13th Ed., 1929) 468; Prosser, Torts (1941) 178; Winfield, Duty in Tortious Negligence (1934), 34 Columbia L. Rev. 41.

If on the other hand the intervening act be one the likelihood of which was definitely increased by the defendant's act, or one which in fact was caused by the defendant's act, it is not a superseding proximate cause of injuries incurred by reason of it.

"An intervening act of a human being . . . which is a normal response to the stimulus of a situation created by the actor's negligent conduct is not a superseding cause of harm to another which the actor's conduct is a substantial factor in bringing about." Restatement, Torts, § 443. "The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about if, (a) the actor at the time of his negligent conduct should have realized that a third person might so act, or (b) a reasonable man knowing the situation existing when the act of the third person was done would not regard it as highly extraordinary that the third person had so acted, or (c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent." Restatement, Torts, § 447. Compare Green, Rationale of Proximate Cause (1927), with Beale, The Proximate Consequences of an Act (1920), 33 Harvard L. Rev. 633. And see Prosser, Torts (1941) 352.

The Arkansas cases having to do with the effect of intervening forces upon proximate causation are collected and analyzed in (1947) 1 Ark. L. Rev. 148. Of them, defendant relies principally upon *Gage* v. *Harvey,* 66 Ark. 68, 48 S. W. 898, 43 L. R. A. 143, 74 Am. St. Rep. 70; *Pittsburgh Reduction Co.* v. *Horton,* 87 Ark. 576, 113 S. W. 647, 18 L. R. A., N. S. 905; *Arkansas Valley Trust Co.* v. *McIlroy,* 97 Ark. 160, 133 S. W. 816, 31 L. R. A., N. S. 1020; and *Arkansas Power & Light Co.* v. *Marsh,* 195 Ark. 1135, 115 S. W. 2d 825.

In *Gage* v. *Harvey,* 66 Ark. 68, 48 S. W. 898, 43 L. R. A. 143, 74 Am. St. Rep. 70, it was held that a saloon keeper would not be liable for the loss of money

forcibly taken from plaintiff's pockets by a thief while plaintiff was drunk. The theory of plaintiff's action was that the saloon keeper had caused him to get drunk by improperly selling him too much liquor, thus making him easy prey for a thief. The answer to this argument is that though "the sale and consumption of the liquor may have furnished the opportunity or occasion for the wrongful act of the third person," it is not the proximate cause of the loss unless the defendant as a reasonable man would have foreseen that such a wrongful act by a third person might occur as a result of defendant's conduct. See Restatement, Torts, §§ 448, 449. It is enough now to distinguish *Gage* v. *Harvey* that it involved an intervening deliberate criminal act by a third person, whereas no such criminal intervention occurred in the instant case.[2]

The defendant's negligence in *Pittsburgh Reduction Co.* v. *Horton,* 87 Ark. 576, 113 S. W. 647, 18 L. R. A., N. S. 905, was in discarding loaded dynamite caps on a dump pile where a small boy, Charlie Copple, picked them up. The intervening negligence was in Charlie's parents, who probably knew what the caps were, but allowed Charlie to keep them around the house for about a week, even handling them for him. Later Charlie traded the caps to a 13-year-old schoolmate, in whose hand one of them exploded while he was playing with it. The hand had to be amputated. The intervening negligence of Charlie Copple's parents was held to render defendant's prior negligence not the proximate cause of the schoolmate's injury. The dangers created by defendant's original act and Charlie's innocent reaction to it had come to rest, a situation of apparent safety had developed when the dynamite caps came under the control of competent adults who knew what they were and had ample time and opportunity to guard against the dangers inherent in them. That they would not take proper precautions was a new danger not within the area of appreciable risk created by defendant's act; it was a sort of intervening

---

[2] That intervening deliberately criminal acts of third persons will not always break the chain of causation is illustrated by *Southwestern Bell Telephone Co.* v. *Adams*, 199 Ark. 254, 133 S. W. 2d 867. But see *Strong* v. *Granite Furn. Co.*, 77 Utah 292, 294 Pac. 303, 78 A. L. R. 465.

conduct which would not have been reasonably anticipated even by one who might have foreseen every event in the series up to the time when Charlie openly took the dynamite caps into his miner father's home.

*Arkansas Valley Trust Co.* v. *McIlroy,* 97 Ark. 160, 133 S. W. 816, was nothing more than an ordinary case of contributory negligence. The plaintiff's own negligence occurred after the defendant's, and was a proximate cause of his own injury. The typical case of contributory negligence is that in which the plaintiff's and the defendant's negligence concur as proximate causes of injury to the plaintiff, in which case recovery by the plaintiff is denied. Such cases give little aid in solving the problem presented when concurrent negligences combine to produce injury to a non-negligent third party.

In *Arkansas Power & Light Co.* v. *Marsh,* 195 Ark. 1135, 115 S. W. 2d 825, the remaining case principally relied upon by defendant here, a judgment against the defendant company was affirmed in this court. The defendant had in 1931 dug a hole near a street curb, leaving it open and unguarded. W.P.A. workers later stuck a post in the hole as a warning marker, but small boys at play broke off the post. In 1935 the plaintiff's wife fell into the hole and was injured. The holding was merely that no intervening act had occurred to break the chain of proximate causation running directly to defendant's original act.

Though Arkansas has heretofore had no case in which the act intervening after a defendant's negligence occurred exactly as did Snider's when he crashed into the back of plaintiff Wilson's car on Point Remove bridge, there have been some in which the facts were similar. In *Healey & Roth* v. *Balmat,* 189 Ark. 442, 74 S. W. 2d 242, the defendant negligently parked an ambulance on a highway so as to leave only a narrow space for passing, then a third person, driving recklessly, collided with the ambulance and injured plaintiff, a bystander. The injured man's judgment against defendant was sustained. Also see *Coca-Cola Bottling Co.* v. *McAnulty,* 185 Ark. 970, 50 S. W. 2d 577, (defendant negli-

gently parked truck so as to obstruct highway causing plaintiff at side of highway to be struck by car negligently driven by third person; recovery sustained). The analysis properly employed in those cases seems equally applicable here.

Other jurisdictions have passed upon sets of facts more nearly identical to those here involved. In *Judd* v. *Rudolph*, 207 Iowa 113, 222 N. W. 416, 62 A. L. R. 1174, it was held that the driver of an automobile who by his negligence placed another car and its driver in a position where they were struck by a third car, which collision would not have occurred had it not been for the first driver's negligence, is liable for the injuries sustained by the driver of the second car, irrespective of negligence in the driver of the third machine. To the same general effect see *Morrison* v. *Medaglia*, 287 Mass. 46, 191 N. E. 133; *Walker* v. *Stecher*, 219 Minn. 152, 17 N. W. 2d 317; *Paup* v. *American Telephone & Telegraph Co.*, 124 Nebr. 550, 247 N. W. 411; *Davenport* v. *Evans*, 360 Pa. 74, 60 Atl. 2d 30; *Caylor* v. *B. C. Motor Transport*, 191 Wash. 365, 71 Pac. 2d 162. It is quite clear that though the damage immediately complained of be inflicted by another car driven negligently, the first driver whose negligence created an appreciable risk of the subsequent collision may be held liable for it.

We conclude that the intervening negligent act of Snider in the instant case cannot be held as a matter of law to have been the sole proximate cause of the injuries suffered by plaintiffs when Snider's truck crashed into the rear of Wilson's car. The question was properly left to the jury under instructions setting out our law as to the nature of negligence and proximate causation. It was permissible for the jury here to find that the act of defendant's driver in stopping his truck suddenly was a substantial factor in producing plaintiffs' injuries, and also to find that a reasonable man would have foreseen a possibility of the happening of the sort of intervening act which did take place and that the possibility was substantially increased by the defendant's act.

(2) Defendant's other contention on appeal is that the Circuit Judge improperly vacated the judgment in Hill's favor in the Glenn Smith case, in which Mr. Smith sought damages for loss of the services, companionship and society of his wife and on account of medical and hospital bills paid for her.

The motion to vacate the judgment was in the nature of an application for new trial. Since the judgment was rendered on November 29, 1948, and the motion to vacate came on February 16, 1949, it was filed after the lapse of the fifteen days which the statute allows for motions for new trial. Ark. Stats. (1947), § 27-1904. However, "as the record is silent as to the considerations that controlled the court in permitting the motion to be filed and remain of record, it must be presumed that they were legally sufficient to justify such action, and that it was made to appear that the delay was unavoidable." *Fordyce* v. *Hardin,* 54 Ark. 554, 556, 16 S. W. 576, followed in *Metropolitan Life Ins. Co.* v. *Thompson,* 203 Ark. 1103, 160 S. W. 2d 852, and numerous other cases. The motion must be taken as having been properly filed.

If the Circuit Judge in acting on the motion had set the judgment aside for the sole and express reason that it was inconsistent with the judgment in Mrs. Smith's favor in her companion suit, his act of setting aside only the one judgment and leaving the other in effect might have been questionable. There is substantial authority that the proper procedure in such situations is to set both judgments aside, leaving it to a future jury to resolve the inconsistency, on the theory that it is a jury function and not the judge's job to determine what the facts were. *Swiencicki* v. *Wieczerzak,* 6 N. J. Misc. 145, 140 Atl. 248; *Reilly* v. *Shapmar Realty Co.,* 267 App. Div. 198, 45 N. Y. Supp. 2d 356; *Gladd* v. *Paslawski,* 157 Pa. Super. 489, 43 Atl. 2d 570. *Contra, Ramer* v. *Hughes,* 131 S. C. 490, 127 S. E. 565. But the Judge's order in the instant case does not reveal that this apparent inconsistency was the sole reason, or even a reason, for his act of setting aside the Glenn Smith judgment. His order is silent as to his reasons. "We have repeatedly held

that, during the term of court at which a judgment is rendered, the court has the inherent power to set aside the judgment, and it may do so without stating any cause. . . . We know of no case . . . that prohibits a court from controlling its orders and judgments during the term in which they were entered. It therefore becomes unnecessary to set out the evidence taken on the motion to set aside the judgment.'' *Union Sawmill Co.* v. *Langley,* 188 Ark. 316, 319, 66 S. W. 2d 300, 302. To the same effect: *Wells Fargo & Co.* v. *W. B. Baker Lbr. Co.,* 107 Ark. 415, 155 S. W. 122; *Driver* v. *Treadway,* 175 Ark. 1028, 1 S. W. 2d 84; *Stinson* v. *Stinson,* 203 Ark. 888, 159 S. W. 2d 446. We need not decide the question whether, when inconsistency of verdicts is the sole reason for setting a judgment aside, the judge must set both aside or may select one only to be vacated. It is enough that in Arkansas ''courts have the inherent power to control, or to set aside, their judgments or decrees, without assigning cause, at the same term at which they were rendered.'' *Security Bank of Branson, Mo.,* v. *Speer,* 203 Ark. 562, 157 S. W. 2d 775.

The judgments and order of the Circuit Court are in all respects affirmed.

GEORGE ROSE SMITH, J., dissenting. I am unable to concur in the reason given for allowing the trial court to set aside the judgment against Glenn Smith. It is said that since the court's order is silent as to the ground upon which the judgment is vacated, we cannot assume that the trial court's reason was the inconsistency between the verdict for Mrs. Smith and that against her husband. It does not seem to me that the record supports this conclusion.

In his motion Smith pointed out that the jury had awarded damages to his wife and yet had failed to allow compensation for medical expenses that were established by undisputed testimony. The prayer in the motion was that the judgment against Smith be set aside. The court's order recites that the motion is presented to the court and that after hearing argument of counsel the court vacates the judgment. To me the only reasonable

conclusion is that the court acted in response to, and upon the ground stated in, the motion.

This conclusion is strengthened when we remember that in effect this was a motion for new trial. We have held in cases without number that a party filing a motion for new trial abandons all assignments of error not contained in the motion. See, for example, *Ferguson* v. *Ehrenberg*, 39 Ark. 420. Hence Smith abandoned all grounds for new trial except the inconsistency between the verdicts. I think it necessarily follows that the court relied on that ground in vacating the judgment.

If I am correct in my view, then we must decide the additional question of whether the trial court has the power to set aside only one of two inconsistent verdicts. As indicated in the court's opinion, the great majority of the cases elsewhere hold that both verdicts should be set aside, since no one can tell which one truly represents the jury's intention. Here the jury for reasons of its own may have decided to include the medical outlay in the verdict for Mrs. Smith. Of course the jury had no right to adopt such a course under the court's instructions, but neither had it any right to return conflicting verdicts. If my supposition is true, then a second trial for Glenn Smith may result in a double recovery of these medical expenses. I am aware, however, that the minority rule permits what was done in this case, and by this dissent I do not intend to express my own preference between the two lines of authority. My only thought is that the question should be faced and decided.