STANDARD PIPE LINE COMPANY, INC., v. DILLON.

## Opinion delivered July 4, 1927.

1. MASTER AND SERVANT—NEGLIGENCE OF MASTER.—In an action for the death of an employee of the defendant company engaged in laying a pipe line, *held* that the evidence warranted the jury in finding that the company's act in raising a pipe line heavily charged with oil and gas, which exploded, covering the employee with oil, was negligence.

2. MASTER AND SERVANT—PROXIMATE CAUSE OF PNEUMONIA.—In an action for the death of an employee of a pipe line company, whether the drenching of the employee with oil negligently caused to be raised was the proximate cause of pneumonia by the employee, from which he died, *held* for the jury.

3. NEGLIGENCE—PROXIMATE CAUSE.—Whether defendant's negligence was the proximate cause of the injury sued for is ordinarily a question to be determined by the jury.

4. NEGLIGENCE—PROXIMATE CAUSE.—To warrant a finding that negligence was the proximate cause of the injury, it is not necessary that the particular injury should have been foreseen; if the act or omission is one which the defendant, in the exercise of ordinary care, ought to have anticipated as likely to result in

the injury of others, it is liable for an injury proximately resulting therefrom, though it might not have foreseen the particular injury which did occur.

Appeal from Nevada Circuit Court; *James H. McCollum*, Judge; affirmed.

*T. M. Milling, Gaughan & Sifford* and *Don W. Harrell*, for appellant.

*Huey P. Long* and *William F. Denman*, for appellee.

KIRBY, J.   This is an action for damages brought by appellee, as administratrix of the estate of Henry Dillon, against the Standard Pipe Line Company, Inc., for causing the death of her husband, Henry Dillon, by the carelessness and negligence of said company by raising or causing to be raised a pipe line heavily charged with oil and gas, which exploded and broke, the oil striking the deceased with violence, knocking him down and covering him, with the result that he developed pneumonia, from which he died.

Deceased was in the employ of the appellant company as water carrier, on or about the 11th day of May, 1925, at or near a village known as Cross Roads, in Union County, Arkansas, his duty being to carry water to the crew of the appellant engaged in constructing a pipe line near there. At the time of the injury the crew was engaged in laying the 10-inch pipe line under and beneath a 4-inch pipe line owned by the Lion Oil & Refining Company, and it was alleged that said crew, while so engaged, negligently, carelessly and recklessly raised said pipe of the Lion Oil & Refining Company, which was heavily charged with oil and gas, causing same to burst and explode and drench the deceased with oil, from which he later developed pneumonia, and died on the 25th day of May.

The appellant company denied all the allegations of negligence and that the deceased was injured by the oil violently escaping from the burst pipe, and that pneumonia was developed on that account, and any liability for causing the death of deceased; pleaded assumed risk,

and that the death resulted from natural causes, for which it was in no wise responsible.

Appellant insists for reversal that it was not guilty of negligence in raising the pipe line of the Lion Oil & Refining Company, and that the bursting of the pipe line and the drenching the appellee's intestate with oil therefrom was not the cause of the deceased contracting pneumonia, from which he died.

The pipe line at the place was being laid in a ditch full of water, and, according to the testimony of the foreman of appellant, in charge of the work, the small live pipe line, on top of the ground, was raised high enough to put the 10-inch pipe under it in order to make the connections above the water, where they could be seen. It was the custom to lay the pipe line being constructed by digging a trench or ditch deep enough to carry it under the other pipe lines, already constructed, which were also raised at times to permit construction of new lines, it being customary to put the new lines under the lines already laid.

The superintendent stated that, if the ditch had not been full of water, the pipe would have been connected in the ditch without raising the pipe line on the surface.

The jury might have found that there was negligence, under the circumstances, in lifting the surface line, carrying oil under a 400-pound pressure, high enough to connect the larger pipe line above the water in the ditch, but for which, of course, it would not have been necessary to raise the live line so high, nor at all.

There was some testimony tending to show that the pipe line could have been raised without danger of breaking from strain and vibration, if it were not in operation, but it was not the custom to ask operators of other lines to cut off the power during the crossing of the new line, and, of course, the builder of the new line could not stop the operation of a line not belonging to it.

Even though it be conceded that appellant's servants used due care in the raising of the pipe line, it does not follow that there was no negligence in raising it to the

height necessary to connect the 10-inch line above the surface of the water in the filled ditch, nor in raising it at all, since, but for trying to make the connection with the ditch full of water, there had been plenty of clear space, as was intended in the digging of the ditch, to make the connection without raising the live pipe on the surface.

Neither can we say that the drenching of the deceased with the oil from the pipe negligently caused to be raised could not have been the proximate cause of the alleged development of the pneumonia, from which the injured employee died. The pressure was strong in the pipe, and one witness testified that the stream of oil, when the pipe broke, knocked the deceased down and covered him with the oil, although the testimony on this point is somewhat in conflict, and there is conflict also as to the time deceased remained in his oil-drenched clothing before he was able to get back to his room and change his clothing, as he was permitted to do immediately after the occurrence.

The physician treating him at the time of his death said it was caused by pneumonia following flu. Some of the expert witnesses testified that the wetting or drenching of the deceased with the oil would not have caused the development of pneumonia, but for germs already in his system, while others thought it would not have caused it at all. Other physicians testified that they would attribute the development of pneumonia, afterwards, to the condition produced by the oil escaping from the broken pipe, one saying that it was especially calculated to do so, because of the closing of the pores of the skin by the envelopment of the body in the crude oil.

Under the circumstances we cannot say that the verdict is not supported by substantial testimony, nor, as a matter of law, that the jury, the question being one ordinarily for its determination, was not warranted in finding the negligence the proximate cause of the injury. While it is generally held that, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and prob-

able consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of attending circumstances. Still it is not necessary that the particular injury should have been foreseen, but, if the act or omission is one which the party ought, in the exercise of ordinary care, to have anticipated as likely to result in the injury of others, then he is liable for any injury proximately resulting therefrom, although he might not have foreseen the particular injury which did occur. *Pulaski Gas Light Co.* v. *McClintock,* 97 Ark. 576, 134 S. W..1189, 1199, 32 L. R. A. (N. S.) 825; *Morgan* v. *Cockrell,* 30 L. R. 407, 294 S. W. 44; and *Mid-Continent Life Ins. Co.* v. *Chappell, post* p. 712.

We find no prejudicial error in the record, and the judgment is affirmed.