BOOTH & FLYNN *v.* PRICE.

Opinion delivered June 15, 1931.

*John G. Rye* and *W. P. Strait,* for appellant.

*Robert Bailey* and *Hays & Smallwood,* for appellee.

HART, C. J., (after stating the facts). The principal assignment of error is that the court erred in not instruct-

ing a verdict in favor of appellants. In determining the rights of the parties to this lawsuit, the court must consider the relation in which they stood. On the part of appellants, it is insisted that the court should have told the jury, as a matter of law, that the relations of master and servant did not exist between appellant and appellee, and that appellee was a mere volunteer in helping the watchman of appellant put out the fire. Consequently, it is said that appellants owed him no duty in the premises except to refrain from injuring him after his perilous condition was discovered. They invoke the general rule that a person who is not authorized to perform as a servant the work, in doing which he was injured, cannot recover damages of the master, because the master, not having authorized him to act, owes him no duty. There is an exception to this rule, where the injured person is an "emergency servant," acting at the request of an employee who has, under such circumstances, authority to request his services, although ordinarily he is not invested with such power. *Central Kentucky Traction Co.* v. *Miller,* 147 Ky. 110, 143 S. W. 750, 40 L. R. A. (N. S.) 1184; *Hollenback* v. *Stone & Webster Engineering Corporation,* (Mont.) 129 Pac. 1058; Labatt on Master and Servant, vol. 4, § 1563; and 39 C. J. 554. The latter authority says that it has been held in the case of an "emergency servant" that the liability of the master for an injury to him is governed by the ordinary rules as to the liability of the master for an injury to a servant.

As stated in *Marks* v. *Rochester Railroad Co.* (Court of Appeals of New York) 40 N. E. 782, "In every business and employment there are exigencies which are not anticipated, and which require a servant to act, in the absence of the principal, for the immediate protection of his interest; and he may do things in his interest, when the emergency arises, which transcends his usual authority, and they will be deemed to have been authorized."

This court has recognized that where an emergency exists, requiring immediate action to protect the master's

interest, the servant has an implied authority to employ help, and the person so employed becomes the servant of the master and entitled to protection as such. See case note to Ann. Cas. 1913C, at 793. In *St. Louis, Iron Mountain & Southern Railway Company* v. *Jones,* 96 Ark. 558, 132 S. W. 636, recovery was refused a brakeman employed by the conductor of a freight train, the brakeman having been injured while assisting in loading and unloading freight. In *Yazoo & Mississippi Valley Rd. Co.* v. *Kern,* 99 Ark. 584, 138 S. W. 988, which was an action for damages for the death of a switchman employed by a yardmaster, the trainmaster alone having authority to employ a train crew, a recovery was likewise denied. Again, in *Henry Quellmalz Lumber & Manufacturing Co.* v. *Hays,* 173 Ark. 43, 291 S. W. 982, it was held that, if an unforeseen emergency arises rendering it necessary in the employer's interest that his employee have temporary assistance, the law implies authority to procure such necessary help, and an assistant so procured is entitled to the same protection as any other employee. In that case recovery was denied because the undisputed evidence showed that there was no sudden or unexpected emergency which would give the ginner the implied authority to employ a temporary assistant to unstop the gin stand. The court expressly approved the view, however, that whether circumstances constitute an emergency authorizing an employee to procure temporary assistance, so as to entitle the assistant to the same measure of protection as other employees, is generally a jury question.

According to the allegations of the complaint and the proof introduced by appellee, the jury was warranted in finding that the fire was caused by gasoline which had been allowed negligently to escape from the feed pipe extending from the main tank to the carburetor and falling on the platform of the ditch digging machine where the vapors arising therefrom were ignited by coming in contact with the lighted lantern which the watch-

man had been instructed to keep lighted and sitting on the platform of the machine. The fire thus started gave rise to an unexpected and sudden emergency which warranted the jury in finding that the watchman had implied authority to summon to his assistance in putting out the fire appellee and his companion. In other words, the jury might have found that appellants failed to properly inspect their machine or they would have discovered the defect in the feed pipe which allowed gasoline to drip from it, and their negligence in so doing was the cause of the original fire because the gas formed by the dripping gasoline coming in contact with the lighted lantern caused the original conflagration.

It is claimed, however, by counsel for appellants that this was not the proximate cause of the injury of appellee. They insist that his own conduct in going into the flames to turn off the stopcock near the main tank was an intervening cause, and that therefore appellants are not liable. The general rule is that what is the proximate cause of an injury is a question for the jury. It is to be determined as a fact in view of the circumstances attending it. It is ofttimes difficult of application, but the question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation? So, it is generally held that, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable sequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. *Milwaukee & St. Paul Ry. Co.* v. *Kellogg*, 94 U. S. 469; *Pittsburg Reduction Co.* v. *Horton*, 87 Ark. 576, 113 S. W. 647; *Bona* v. *Thomas Auto Co.*, 137 Ark. 217, 208 S. W. 306; *Meeks* v. *Graysonia, N. & A. Rd. Co.*, 168 Ark. 966, 272 S. W. 360; *Standard Pipe Line Co.* v. *Dillon*, 174 Ark. 708, 296 S. W. 52; and *Mays* v. *Ritchie Grocer Co.*, 177 Ark. 708, 7 S. W. (2d) 980.

In view of the attending circumstances in the present case, we think the court was warranted in submitting to the jury the question whether or not the original negligence of appellant in allowing the gas to escape from the feed pipe in the vicinity of a lighted lantern was not the proximate cause of the injury received by appellee. It was the duty of the watchman to protect the property, and the emergency was so great that the jury might have found that appellee was an "emergency servant" within the meaning of the rule above announced.

Suppose the watchman had been the one who was in the place of appellee. His injury would be directly traceable to the original negligence of the appellant. Appellants should have anticipated that all the events which did happen in the present case would likely happen if a fire was caused by its negligence in allowing gasoline to escape from the feed pipe, vaporize, and then be ignited from a lighted lantern nearby.

The court also submitted to the jury the question of the assumption of risk and contributory negligence of appellee. It is earnestly insisted by counsel for appellants that the court should have told the jury, as a matter of law, that appellee assumed the risk, and that he was guilty of contributory negligence. This we consider the most serious question in the case, but we do not think that it was *per se* negligence for a servant to be in a place of danger when his master's property was on fire and in the discharge of his duty he was trying to put it out. Of course, there is always more or less danger in working around property that is on fire. The greatness of the hazard depends upon the attending circumstances. For instance, the course of the wind might be a contributing circumstance which would greatly increase the hazard, the height and extent of the flames, and various other matters might furnish contributing causes. Under the circumstances attending the present case, we do not think that it can be said that the conduct of appellee was so reckless or so unusually hazardous as to prevent

the jury from allowing him a recovery. He and a companion were driving along the road, when the watchman suddenly and unexpectedly called them to help to put out the fire. He immediately jumped out of his automobile and came to the fire. He knew something about the value of the property and its necessity to appellant in conducting its work. He probably knew that, if the machine was destroyed, appellants would not only lose the value which was considerable, but that they would have to stop the work until it could procure a new machine. He endeavored to protect himself by wrapping his arm in a quilt to prevent it being burned when he went to turn off the stopcock so as to stop the gasoline from flowing out of the main tank. Doubtless for the moment he overlooked the fact that the gasoline had been spraying out on his clothes from the waist downwards and that this might ignite from the flames. It is natural that he could not view the circumstances with the same coolness that any one taking a retrospect of the occurrence could do. He was actuated by a laudable desire to prevent, not only the destruction of the property, but to keep the employees from having to be idle until a new machine could be procured. In any event, it would seem that the jury might find that he acted with as much prudence as any reasonable man would have done under the circumstances, and that it should not be said, as a matter of law, that he acted in such a reckless manner with full realization of the unusual hazard attending the occurrence that he should not be allowed to recover for the damages resulting from his injury.

In *Reynolds* v. *Great Northern Railway* (Minn.) 199 N. W. 108, a freight train was distributing supplies to stations along the line of the road. While gasoline was flowing from a tank car through a hose into the intake pipe of the pumping plant, a brakeman set his lighted lantern near the mouth of the intake pipe. For some unknown reason, the conductor pulled the nozzle of the hose out of the pipe, and an explosion followed setting

hose and car on fire. In an attempt to cut the hose with a knife, the conductor suffered burns which caused his death. The court held that whether pulling the nozzle out of the pipe was the sole or only concurring cause of the accident was a question for the jury. It was further held that whether the attempt to cut off the hose was so reckless that the conductor should have been deemed to assume the risk, was also a question for the jury.

Appellee knew that, if the fire reached the gasoline in the main tank, there would be an explosion which would utterly destroy the property. He was confronted with an emergency and adopted the only means which could have been adopted to save the property, and that was to turn the stopcock and thus prevent the gasoline from flowing from the tank. As we have already seen, he was somewhat excited, and he should not be prevented recovering because he failed to realize the danger from the gasoline which had escaped on the lower parts of his clothing evaporating and coming into contact with the flames. In view of all the circumstances, we do not think it can be said as a matter of law that his conduct was so unreasonable and reckless that he should be deemed to have assumed the risk as a matter of law or that he was guilty of contributory negligence as a matter of law.

Numerous instructions were given at the request of both parties. We have carefully examined the instructions given, and we think that the case was fully and fairly submitted to the jury under the principles of law above announced. No complaint is made as to the amount of damages recovered; and, in view of the severity of the burns suffered by appellee, there could be no just complaint in this respect.

We find no reversible error in the record, and the judgment will therefore be affirmed.