SOUTHWESTERN BELL TELEPHONE COMPANY *v.* ADAMS.

4-5659 133 S. W. 2d 867

Opinion delivered November 20, 1939.

*Downie & Downie,* for appellant.

*O. W. Pete Wiggins,* for appellee.

MEHAFFY, J. The appellee, Thomas O. Adams, was the owner of a building at Seventeenth and Railroad streets in the city of Little Rock, which was used as a warehouse. In December, 1937, without appellee's consent, appellant sent its employee to the building to remove a dead telephone. It is alleged that said employee forced open a window, removed the telephone, failed to fasten the window, removed the bars from the inside of the door, opened the door and left it open, leaving the premises open and inviting to trespassers. The acts of appellant made possible and started in

motion the unlawful trespass; that by the exercise of ordinary and reasonable diligence appellant could have anticipated that such act on its part would entice transients or hoboes using the Rock Island right-of-way to occupy the premises; that certain transients or hoboes wrongfully entered the premises, took possession of the building and its contents; that while such transients or hoboes were in such unlawful and unauthorized possession they negligently permitted fire to destroy the building and its contents, and that plaintiff was damaged in the sum of $1,090.

The appellant demurred to the complaint, stating that it did not state facts sufficient to constitute a cause of action against appellant. The demurrer was overruled, and appellant answered denying each and every material allegation in the complaint.

There was a verdict and judgment for the sum of $1,090. Motion for new trial was filed and overruled, and the case is here on appeal.

Thomas O. Adams, appellee and owner of the building which was destroyed by fire, is blind. He testified in substance that he lives at 1115 Cumberland, Little Rock, and was the owner of a corrugated iron warehouse located at 2623 West 17th street, or Seventeenth and Railroad streets; the building was 32 by 62 feet with four rooms in the east end of the building, which was of ordinary frame construction; the east part of the building is farthest away from the railroad; he read in the morning paper that fire occurred on the last day of 1937; he had last visited the building about December 5, 1937; he visited every month to see if everything was locked up; Mrs. Gardner and a darky named Alec Duncan were with him on this inspection trip; he unlocked the front door with a key, made a thorough inspection finding everything securely locked, and relocked the front door when he left; every door except the front door was nailed, and they laid two big planks across the doors and locked the front door. In the building at the time were scales worth $165, a safe cabinet worth $50, records of the Guffey Coal Act, a desk worth $25, a fence worth $50, and a stove. They were all destroyed by fire. The

ϊ tove was at the east end of the building; the telephone, about December 1, 1937, was in good shape on the table in the southeast office, and the windows in that office had wooden bars and were nailed down. The building could be replaced for $800, although witness paid $1,250 for it. He thinks $1,090 will cover his total damage. It was anywhere from December 1, to December 5, 1937, when he last visited the building. One door has bars across the middle of it and heavy pins fitting in the floor so that it was impossible to open the door without taking them off; he entered by the front door, which had no bars.

Callie Gardner testified in substance that she lives in Little Rock and remembers the visit to the building about the first of December, 1937, with appellee and Duncan. She testifies that they were there 30 or 40 minutes, and corroborates appellee about the inspection, and says she knows the windows and doors were all barred, except the door which appellee locked. They went out the front door again and appellee locked it; does not remember the date the fire occurred.

T. S. Williams, captain of No. 3 fire station, testified in substance that he answered the call to Seventeenth and Railroad on December 31, 1937; his station was located at 3515 West Twelfth; the truck arrived three or four minutes after the call; the building at that time was afire from one end to the other, and the roof was caving in when they laid the hose; he would call the building corrugated iron, and some of the iron could probably be used again; the roof caved in and the wall on the south, but the north wall had to be knocked in; fence was on fire, but witness does not know how much was destroyed; he stayed till the fire was out, about two hours; he did not know about the property in the building; some of the boys, congregated out in front, said there had been some railroad bums sleeping in the building and they might be in there; the firemen forced their way in to see if there was anyone in the building; could not tell where the fire started.

Newton C. Couch testified that in December, 1937, and 33 years prior thereto, he lived at 1708 Jones Street,

which adjoined appellee's property; he discovered the fire around 4 a. m. and called the fire department; the firemen arrived in 15 or 20 minutes; he was in bed and the fire woke him up; he thought it was his brother's barn, but saw it was the warehouse; fire was coming out of the front windows, and the roof was not caving in; thinks the fire started in the office in the southeast part of the building; knows appellee and knows he kept the building locked at some time before the fire; does not know for how long before the fire it had been locked; a telephone man came out about a week before the fire and opened the building by going in a three foot window, setting the window down outside; he went in, got the telephone, and came out a big eight foot door on the south side, leaving the door partly open, and people got in there. He cannot say the building was locked at the time the telephone man went in, although it looked like it by his going in the window; the telephone man did not lock the building when he left with the telephone; someone stayed in the building a few nights before the fire and they were there the night of the fire; knows that appellee had a desk, filing case, little stove, and first class scales in the building; the building was used in his coal business.

Walter Cole, colored, testified that he lived at 1901 Thayer at the time of the fire and came by the premises at 6 a. m. on the morning after the burning of the building; he was there peeling poles close by about December 15th at 8:30 or 9 a. m. when he saw a man come out of the south window and come around and enter the south window, using a small ladder; he saw this man come out the south doorway with a telephone; the man had a truck, but he does not know whose truck it was; the building had been locked before that and witness supposes it was locked that day; he cannot say that it was locked that day, but it had been for some time before that.

Appellee, being recalled, testified that he had never given anyone permission to occupy the building or rented it, from the time he locked it up until the fire, did not know that the place was left open at the time the tele-

phone company removed the telephone. He talked to a Miss Arnn at the telephone company in November prior to the fire, and she told him they had a pick-up order for the telephone at the warehouse and he told her where to get the key; he called her again and she said she would send for it and that was the last he knew about it.

The appellant introduced the following evidence: William Koch testified that he lived in Little Rock, is a station installer for the telephone company and has been employed by it for two and a half years; is employed by the plant department of the telephone company, which takes care of installation and removal of telephones; orders are issued to the plant department by the commercial department for removal of telephones; this order was issued by the commercial department and called for the removal of a telephone; the order showed service was discontinued April 23, 1937, and that the telephone was taken out December 13, 1937; witness had this order to remove this telephone and went to this address, 2326 West 17th Street, and removed the telephone; he went to the front door and it was locked and he went to the back; he had a small three-foot ladder and pushed against the window and it fell in; he looked in and saw the telephone; it was demolished to some extent and the building was not in good enough repair to take care of a telephone; he proceeded to go in and get the telephone; all evidence showed the building had been entered before and had been used as a toilet; the equipment was in place and witness did not know exactly what part of the building he was in; was not interested in the office equipment; removed the telephone and went out the same entrance he came in; opened no door or other window, but left by the same window he entered and replaced it, leaving it and the premises exactly as he found them; generally when telephones are in unoccupied houses, and they have some way of knowing who the building belongs to, they obtain the key and have permission to go in; seeing the building in the shape it was in and the condition the telephone was in and having no way of getting in, seeing other people had been in the building and the property of the telephone company was in danger, witness took the telephone out for that cause; employees

are instructed not to enter buildings that are locked; but under this condition he took it upon himself to enter the building and get the telephone; someone had been in before witness; in view of the condition of the telephone and building, he entered the building in contravention of his instructions, but felt that under the circumstances he was justified in so doing; the building stands along the railroad tracks; he took no bars off windows or doors; the service order in question does not state the name of the owner of the building, but names the last occupant, J. L. Holdbrook; he had no way of knowing that the building belonged to appellee or who it belonged to; the telephone is the only thing he took away from the building; he did not see witness Couch; cannot say witness Couch did not see him when he entered his sole interest was to get the telephone; he had no way of knowing who the owner of the building was; the order to remove the telephone was issued to to him that morning; that was the first time he ever saw it, and the first trip he ever made to the premises; the trip was on December 13th at approximately 9 a. m.; the building and fence were in bad repair; there was no debris in front and he did not notice the back; between the building and the railroad track some men were peeling pine logs and there was loose bark all over the siding; he did not open the bars inside the door; saw men working there at the time; did not come out the door; he was there approximately 20 minutes; did not not see anyone go in or out of the window; window was just setting up there, not on hinges; just put his hand on it and it fell in and he set it down right beneath where it was; went out the window and put the window back where it was; did not come out at the door; is still working for the telephone company.

The evidence showed that the appellee was blind.

The court correctly overruled the demurrer of appellant. The cases cited by appellant, and many others, hold that if the injury appeared to be the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of

attending circumstances, it will warrant a finding against the original wrongdoer.

The complaint states that the appellant forced the window open, removed the telephone, removed the bars from the inside door, opened the door and left it open, leaving the premises open and inviting to trespassers; that the acts of appellant made it possible and started in motion the unlawful trespass; that the appellant anticipated, or could have anticipated, by the exercise of reasonable diligence, that such acts would entice transients or hoboes using the Rock Island right-of-way to occupy the premises. The complaint, therefore, stated a cause of action.

It is next stated by appellant that the acts of appellant were not the proximate cause of appellee's injury. Appellant then states the rule in Arkansas as to proximate cause as follows:

". . . in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of attending circumstances."

Unquestionably, this is the correct rule, not only the one announced by the authorities cited by appellant, but it is the established rule of this court.

The first case to which attention is called by appellant is *Milwaukee & St. Paul Ry. Co.* v. *Kellogg,* 94 U. S. 469, 24 L. Ed. 256. The court in that case, among other things, said: "In the nature of things, there is in every transaction a succession of events, more or less dependent upon those preceding, and it is the province of a jury to look at this succession of events or facts, and ascertain whether they are naturally and probably connected with each other by a continuous sequence, or are dissevered by new and independent agencies, and this must be determined in view of the circumstances existing at the time."

The court also said in the same case: "The true rule is, that what is the proximate cause of an injury

is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances or facts attending it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force applied to the other end, that force being the proximate cause of the movement, or as in the oft cited case of the squib thrown in the market place.''

The next case cited and relied on by appellant is *Pittsburg Reduction Co.* v. *Horton,* 87 Ark. 576, 113 S. W. 647, 18 L. R. A., N. S., 905. In discussing the rule in this case, the late Chief Justice HART said: ''The difficulty arises in each case in applying the principle to a given state of facts.'' He then called attention to the case relied on by appellees in that case, *Harriman* v. *Pittsburg C. & St. L. R. Co.,* 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. Rep. 507, and said: ''The facts and the gist of the holding of the court in the Harriman case are fairly stated in the syllabus.'' He then quoted the syllabus as follows: ''A train of cars, passing over some signal torpedoes, left one unexploded, which was picked up by a boy nine years old at a point on the track which he and other children, in common with the general public, had long been accustomed to use as a crossing, with the knowledge and without the disapproval of the company. He carried it into a crowd of boys near by, and, not knowing what it was, attempted to open it. It exploded, and injured the plaintiff, a boy 10 years of age. Held, that the act of the boy who picked up the torpedo was only a contributory condition, which the company's servants should have anticipated as a probable consequence of their negligence in leaving the torpedo where they did, and that that negligence was the direct cause of the injury suffered by the plaintiff.''

The next case to which attention is called by appellant is *Bona* v. *S. R. Thomas Auto Co.,* 137 Ark. 217, 208 S. W. 306. The court, after citing and quoting from the Pittsburg Reduction Case, said: ''It is equally well settled by the decisions of our own and other courts that

'where two concurring causes produce an injury which would not have resulted in the absence of either, the party responsible for either cause is liable for the consequent injury'.''

The court also said in that case: ''Applying these principles to the facts set forth in the statement, the issue of negligence raised by the pleadings was clearly one for the jury.''

Appellant calls attention to *Meeks* v. *Graysonia, N. & A. Ry. Co.,* 168 Ark. 966, 272 S. W. 360. The court there announced the general rule established in this state, and said that it must appear that the injury was the natural and probable consequence of the negligence, and that it ought to have been foreseen in the light of attending circumstances.

The next case relied on is *Standard Pipeline Co., Inc.,* v. *Dillon,* 174 Ark. 708, 296 S. W. 52. The court said in that case: ''Under the circumstances we cannot say that the verdict is not supported by substantial testimony, nor, as a matter of law, that the jury, the question being one ordinarily for its determination, was not warranted in finding the negligence the proximate cause of the injury. While it is generally held that, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of attending circumstances.''

In the case of *Mays* v. *Ritchie Grocery Co.,* 177 Ark. 35, 5 S. W. 2d 728, the late Chief Justice HART, speaking for the court, said: ''If the act or omission is one which the party ought, in the exercise of ordinary care, to have anticipated as likely to result in the injury of others, it is liable for an injury proximately resulting therefrom, though it might not have foreseen the particular injury which did occur.''

In the case of *Booth & Flynn* v. *Price,* 183 Ark. 975, 39 S. W. 2d 717, 76 A. L. R. 957, the court said: ''The general rule is that what is the proximate cause of an

injury is a question for the jury. It is to be determined as a fact in view of the circumstances attending it. It is ofttimes difficult of application, but the question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation? So, it is generally held that, in order to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable sequence of the negligent or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances.''

Appellant then quotes a statement from the annotations in the case of *Strong* v. *Granite Furniture Co.*, 78 A. L. R. 465, found on page 472, but that quotation itself contains the following: ''and could not have been foreseen by him,'' necessarily implying, as all the authorities do, that if it could have been foreseen by the wrongdoer, then the wrongful act was the proximate cause of the injury. In that case the court said (77 Utah 292, 294, P. 303, 78 A. L. R. 465): ''A person is not bound to anticipate malicious or criminal acts of others by which damage is inflicted, even though they are the acts of children. But where an independent illegal act was of a nature which might have been anticipated, and which it was the defendant's duty to provide against, he will be liable for a breach of such duty notwithstanding the production of injuries by the intervention of an act of the character described.''

Appellant quotes from 45 C. J. 926, § 489, but that section, as quoted by appellant, states that ''the result cannot be said to be the natural and probable consequences of the primary cause, or one which ought to have been anticipated.'' This necessarily implies that if it should be anticipated, or ought to be anticipated by the wrongdoer, then he is liable.

In the same volume of C. J., page 931, quoting from § 491: ''But where the condition was such that the injury might have been anticipated, or where such condition rendered it impossible to avoid injury, from another contributing cause, it will be the proximate cause not-

withstanding the intervening agency. So it is no defense to an action for negligence that the injury was caused by the act of a third person who merely took advantage of a situation created by defendant in such a manner as to suggest or invite the third person's act."

It would serve no useful purpose to review all the authorities cited by appellant under this rule. It may be stated that all of them are to the effect that while the intervention of an independent agency ordinarily relieves the first wrongdoer, still if the result or act of the independent agent could have been anticipated the original wrongdoer will be liable. The authorities are practically unanimous in approving this rule.

The rule is stated thus in Cooley on Torts: "The rule has been stated to be that in no case in the connection between an original act of negligence and an injury broken by an intervening act of negligence of another, if a person of ordinary sagacity and experience, acquainted with all of the circumstances, could have reasonably anticipated that the intervening event might, not improbably, but in the natural and ordinary course of things, follow his act of negligence or, stated in another way, if the misconduct is of a character which, according to the usual experience of mankind, is calculated to invite or induce the intervention of some subsequent cause, the intervening cause will not excuse the one guilty of the first misconduct, and the subsequent mischief will be held to be the result of the original misconduct."

"In actions of this description, the defendant is liable for the natural and probable consequences of his negligent act or omission. The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended.

"The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The

original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise.

"Whether in any given case the act charged was negligent, and whether the injury suffered was, within the relation of cause and effect, legally attributable to it, are questions for the jury." *Lane* v. *Atlantic Works,* 111 Mass. 136.

"If defendant was negligent in not securing the turntable, so that it could not be revolved by children, to their injury, the mere fact that it was revolved by other children who were playing upon it at the time the child was injured, will not excuse defendant, if such act ought to have been foreseen or anticipated by it. That it ought to have been foreseen and provided against is shown by the case of *Koons* v. *St. Louis I. M. Railroad Co.,* 65 Mo. 592. Not having been provided against, the original negligence continued and remained a culpable and direct cause of the injury, and the test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise. *Lane* v. *Atlantic Works,* 111 Mass. 136. Mr. Wharton on Negligence, § 85, states the doctrine thus: 'As a legal proposition we may consider it established that the fact that the plaintiff's injury is preceded by several independent conditions, each one of which is an essential antecedent of the injury, does not relieve the person, by whose negligence one of these antecedents has been produced, from liability for such injury'." *Nagel* v. *Missouri Pacific Ry. Co.,* 75 Mo. 653, Am. Rep. 418.

The court of its own motion gave this instruction to the jury: "There has been some testimony here that has created some conflict in the testimony as to what is known in law as intervening cause. For that reason, I will instruct you as to the law of intervening cause.

"Intervening cause will not relieve from liability where the prior negligence was the efficient cause of

the injury. The test is not to be found in the number of intervening events or agencies, but in their character and in the natural connection between the wrong done and the injurious consequences, and if the injury is the natural and probable consequence of the original negligent act or omission, and is such as might reasonably have been foreseen as probable, the original wrongdoer is liable, notwithstanding the intervening act or event. But an intervening cause will be regarded as the proximate cause, and the first cause as too remote where the chain of events is so broken that they become independent and the result cannot be said to be the natural and probable cause or one which ought to have been anticipated. The law will not look back from the injurious consequences beyond the last efficient cause, especially where an intelligent and responsible human being has intervened.''

"Another statement of the rule is that where a number of causes and results intervene between the first wrongful cause and the final injurious consequence, which are such as might, with reasonable diligence, have been foreseen—the last, as well as every intermediate result, is to be considered as the proximate result of the first wrongful cause." 1 Thompson on Negligence, 54.

It is also stated in Thompson on Negligence, same volume, page 55: "In a case in the Supreme Court of the United States, this phase of the doctrine was thus expounded, in the opinion of the court, by Mr. Justice STRONG: 'The primary cause may be the proximate cause of the disaster, though it may operate through successive instruments, as a vehicle at the end of a chain may be moved by a force applied at the other end, that force being the proximate cause of the movement; or, as in the oft-stated case of a squib thrown in the market place'.''

It is undisputed that the appellant's agent deliberately, in violation of law, and in violation of what he knew to be his duty, went to appellee's warehouse which was securely locked, broke in the building at a

window, and, according to the evidence of two witnesses, went out at the door and left it open. According to the agent's own testimony he went to the door and found it locked, could not get in; then went to a three-foot window and had to use a step-ladder in order to get in through the window. He says that he set the window down on the inside after he pushed it open, and then came out of the window with the telephone; but whether he did this or did what the two witnesses swore, was a question of fact for the jury. This warehouse was on the railroad. It is a matter of common knowledge, and known by every intelligent person, that tramps and hoboes congregate around a place of this kind. It was in December, cold weather, a stove was in the building, and, of course, anybody would know that the tramps congregated around there would occupy the building and use the stove to heat it. As we have said, every intelligent person knows this to be true. Then when the agent opened the door and left it open, he knew that tramps would get in. He was bound to anticipate this. He simply left the door open, thereby inviting the tramps to occupy the building. He says the building had been used as a toilet. He looked in the window and ascertained that. The undisputed evidence shows that the doors were securely fastened, and the only possible way for anybody to get into the building to use it as a toilet would be to get a step-ladder, climb to the three-foot window, and open it.

The authorities are practically unanimous in holding that under circumstances like these, whether the damage should have been anticipated was a question for the jury. The appellant does not contend, anywhere, that it did not know that tramps and hoboes would use the building as they did, and the question of proximate cause, or whether the damage should have been anticipated, are questions for the jury.

The judgment of the circuit court is affirmed.

SMITH, McHANEY, and BAKER, JJ., dissent.