John WHITEHEAD (Plaintiff), Respondent,

v.

Lawrence J. SCHRICK (Defendant), Appellant.

No. 30053.

St. Louis Court of Appeals.

Missouri.

Oct. 20, 1959.

G. L. Seegers, Gerwitz & Seegers, St. Louis, for appellant.

Daniel P. Reardon, St. Louis, for respondent.

RUDDY, Judge.

This is an action for personal injuries sustained by plaintiff when his clothes were ignited by a fire where he was employed. Defendant appeals from a judgment in favor of plaintiff.

■ While plaintiff has pleaded five specifications of negligence, only one was submitted to the jury by the court. The negligence submitted was the failure of the defendant to provide a reasonably safe and workable fire extinguisher for the purpose of putting out fires. The jury was required to find that the fire extinguisher furnished was defective and not reasonably safe for the purpose for which it was provided. We shall confine our review to the facts pertinent to the negligence submitted to the jury. Evett v. Corbin, Mo., 305 S.W. 2d 469.

Defendant owned and operated a service station for automobiles and employed the plaintiff on a part-time basis. Plaintiff was regularly employed elsewhere. The service station was located on the northwest corner of Goodfellow and West Florissant Avenues in the City of St. Louis. The front of the station was on West Florissant Avenue and faced south. There were two pumps on each street side of the station. The office was located in the southeast part of the station and to the west of the office was the grease room containing a grease-rack. Apparently this room occupied the entire west side of the station. East of the grease room and north (back) of the office was a small room approximately seven feet by ten feet in size. This room contained tire patching equipment, tires, wheel balancing equipment and a line of ignition parts for automobiles. In addition to the aforesaid, lubricating oils and alcohol were stored in this room. The oil was in sealed cans packaged in cardboard boxes and the alcohol was stored in fifty-gallon drums.

The entrance to this rear room was through a door in the grease room. As you entered the room there was a wooden work bench on the south wall, which would be to the right. A compressor pump was under the work bench. Also under the work bench was a bucket of sand and on top of the bucket of sand was a cardboard box used for the disposal of waste materials. This room was used principally for patching tire tubes. The technique used was to apply a "hot patch" to the tube. In the course of using the hot patch certain waste materials were thrown into the cardboard box. The hot patch was in a metal container. It contained materials that would be ignited and the heat would fuse a rubber patch on the tube. This metal container was thrown into the cardboard box when it had served its purpose. All agreed that the metal container would get very hot when the heating material was burning. There was some difference of opinion as to how long it would take for the metal container to cool off and be safe to throw into the cardboard box without the danger of fire. We need not relate this testimony because no one knew how the fire started in the cardboard box.

Plaintiff had no prior experience as an attendant in a filling station. His duties at defendant's station were the usual duties of a filling station employee, namely, servicing automobiles with gasoline, oil and water, greasing cars, patching tires and keeping the station and premises clean. Both plaintiff and defendant were acquainted with the highly combustible nature of gasoline. Both agreed that alcohol was inflammable but neither thought it was highly combustible.

Plaintiff's part-time employment with defendant began about December 1, 1954. On Christmas Day, 1954, plaintiff reported for duty at noon. Also working for the defendant on this occasion was Mr. Overholzer, a brother-in-law of the plaintiff. On this day plaintiff took care of the servicing of cars with gasoline, oil and water and Overholzer alternated between the pumps and the little room in the rear of the station where he took care of tire tubes

that needed patching. Plaintiff did no patching of tubes on this day.

About 3:45 P.M. plaintiff's girl-friend and his sister came to the filling station and went into the office where they remained. Business "was pretty heavy" and Overholzer was helping plaintiff serve the customers with gasoline, oil and water. About the time plaintiff's girl-friend and sister arrived plaintiff was servicing a 1947 Plymouth automobile. While filling the tank of this automobile, about three gallons of gasoline "flushed" out of the tank onto the trousers of plaintiff. None of the gasoline got on his hands, face or shirt. Plaintiff completed servicing the automobile, went into the office to procure some change for the customer and then returned to service a 1950 Ford automobile. At this time there were five cars on the Goodfellow side of the station waiting to be serviced and four cars on the West Florissant side.

About 4 P.M. plaintiff was filling the tank of the 1950 Ford. While doing so plaintiff's girl-friend and sister "hollered" to him that there was a fire in the back room. Plaintiff left the gasoline hose and nozzle in the tank of the Ford car and ran through the office into the room containing the grease rack, then back to the end of the grease rack and entered the back room. When plaintiff came out of the office into the room containing the grease rack he could see smoke coming out of the back room. As he entered the back room he saw the cardboard box used for waste material burning underneath the work bench. When he entered the room Overholzer was there. Plaintiff did not know how and when he got there. Overholzer had a fire extinguisher in his hands and was pumping it, but it "wasn't working." The fire extinguisher being used was a type that required pumping with a handle provided for that purpose in order to discharge the fire extinguishing chemical. Plaintiff testified that Overholzer had the handle of the fire extinguisher in one hand and was pumping it back and forth, but nothing was coming out of the ex-tinguisher. He saw no fluid from the extinguisher on the floor or in the box. Plaintiff knew how to operate the fire extinguisher, having learned in a training school he attended. He said Overholzer knew how to operate the fire extinguisher.

The flame in the burning cardboard trash box extended a foot to eighteen inches above the box and the fire seemed to be confined to the portion of the box closest to plaintiff and Overholzer. Plaintiff passed behind Overholzer and got inside the room. When he saw the fire extinguisher was not working he decided to get the other fire extinguisher in the office. He turned around and started to pass between Overholzer and the burning box. In doing so the left leg of his pants caught fire. Thereafter his attention was directed toward putting out the fire in his pants leg. Plaintiff was painfully burned. At one place in his testimony plaintiff said his body and clothing did not come in contact with the fire as he passed. However, at another place he said he was not sure about this.

Plaintiff did not know if Overholzer was in the back room when the fire started and he did not know how Overholzer learned of the fire. It was plaintiff's opinion that his sister was the first person to discover the fire. The only persons present in the filling station building when plaintiff responded to the call of fire were plaintiff, Overholzer and plaintiff's girl-friend and sister. Overholzer was unavailable as a witness and plaintiff and his sister did not know how the fire started.

At the trial plaintiff testified that although he was aware gasoline on his trousers created a "dangerous situation" if he went near the fire, he did not think about the gasoline on his trousers when he ran back to the rear room, nor was he conscious of the odor of gasoline on his trouser leg, stating that you can smell the odor of gasoline around a filling station "anytime." He said that when he saw the fire he was worried about defendant's property and the people around the filling station, explaining

that "if that stuff would blow up or anything, you can never tell what is back in those little rooms." During cross-examination when plaintiff was asked what he thought could have happened, he answered: "It could have caught the whole place on fire, hurt everybody around there."

The sister of plaintiff testified that she saw smoke coming from the back room and called to her brother who came running through the office. The next thing she saw was her brother running out of the room with his pants leg on fire. She did not go into the back room and did not see the fire extinguished. She did see some of the customers carrying buckets of water to put out the fire

Defendant came to the filling station after the fire was out. He said the cardboard box was then in the grease room and "it looked like it had been afire." He said the fire left a small quantity of ashes which could be held in the hand. He saw no foam or chemical in the back room or the grease room to indicate the fire extinguisher had been used.

Plaintiff testified the fire extinguishers were to be sent away annually for servicing and for new chemicals. That had never been done while he was employed at the filling station. He said there were no other facilities at the filling station for combating fire. Defendant said the fire extinguishers had been inspected and serviced shortly before the fire occurred. He also said the sand in the bucket was for combating fires. In this connection the evidence showed that the bucket containing the sand was under the burning box.

At the close of plaintiff's evidence he asked leave of court to amend his petition to conform to the evidence by adding an additional allegation of negligence charging the "Defendant negligently and carelessly provided for the use of its employees a defective fire extinguisher thereby furnishing an unsafe appliance for the use of his employees." The defendant objected to the request to amend on the grounds, among others, that defendant was taken by surprise and the negligence specified in the request was not an issue tried by consent of the parties. The trial court overruled the objection and permitted the amendment. The court then asked the attorney for the defendant if he wished to ask for a continuance or proceed to trial. Defendant's attorney then told the court that he was ready to proceed and did not want a continuance.

■ Defendant contends the trial court erred in permitting the amendment and in support thereof states the amendment permitted was not pleaded and the evidence thereon was not admitted by consent "as a ground of actionable negligence." Answering the first ground of this contention it is obvious that it would not have been necessary to amend the pleadings if the substance of the amendment had been pleaded before plaintiff's request to amend. In connection with the second ground stated we have examined the record carefully and we find no objection therein to the admission of evidence relevant to the specification of negligence that forms the basis of plaintiff's amendment. Plaintiff testified to the failure of the fire extinguisher to work as set out in our statement of the facts. At no time during such testimony did defendant claim that the issue of a defective fire extinguisher was not raised by the pleadings. It was defendant's duty to interpose a timely objection to any evidence he felt was outside the scope of the pleadings. Section 509.500 RSMo 1949, V.A.M.S. permits amendment of the pleadings to conform to the evidence when issues not raised by the pleadings are tried by implied consent of the parties. Implied consent to the trial of issues not raised by the pleadings may be inferred from inaction or silence. Evett v. Corbin, supra. We find no abuse of discretion by the trial court in authorizing the amendment. After the court permitted the amendment it gave the defendant an opportunity to request a continuance of the case. Defendant elected to proceed

with the case. We can find no error in the court's action in permitting the amendment.

Three principal contentions are raised in the points relied on by defendant. The first of these is that the evidence failed to support a submissible case of negligence. The only negligence for the jury to find as submitted in Instruction No. 5 was the failure of the defendant "to provide a reasonably safe and workable fire extinguisher for the purpose of putting out said fire * *." In this connection the jury was required to find that the "fire extinguisher was inoperative and not functioning" and "that said fire extinguisher was defective and not reasonably safe for the purpose for which it was provided * * *." This specification of negligence was the subject of the amendment to plaintiff's petition at the close of plaintiff's case. It was the only negligence submitted to the jury as the proximate cause of plaintiff's injury.

▪ Defendant in support of his contention asserts that he had no duty to furnish a fire extinguisher. It is a matter of common knowledge that a gasoline filling station such as was owned and operated by the defendant deals in and stores on the premises products of a highly combustible and inflammable nature. This was known to defendant. He testified that he knew gasoline was highly combustible and that alcohol and oil carried on the premises were highly inflammable. Of course, his testimony merely recited the obvious.

▪ In the case of Tharp v. Monsees, Mo.Sup., 327 S.W.2d 889, 897, the Supreme Court said: "While gasoline is a high explosive, inflammable and inherently dangerous substance, nevertheless it is a very common and also universally used commodity and its properties are generally well known to young and old alike." Defendant knew that many members of the public visited his business premises ·and were a medium through which a fire could start if a lit match or cigarette was carelessly disposed of by someone on the premises.

He knew that "hot patches" were used in the repair of tire tubes and that this repair called for igniting a highly inflammable substance in the "hot patch." We think under the circumstances defendant, having knowledge of the danger of fire, had the duty to provide adequate means for extinguishing a fire. Dakan v. G. W. Chase & Son Mercantile Co., 197 Mo. 238, loc. cit. 261, 94 S.W. 944; Little v. Lynn & Marblehead Real Estate Company, 301 Mass. 156, 16 N.E.2d 688.

▪ Our Supreme Court in the case of Tharp v. Monsees, etc., supra, said: "Whether a man's acts in a particular case constitutes negligence must be judged by the concomitant circumstances and his environment must be taken into account. Dickson v. Mo. Pac. Ry. Co., 104 Mo. 491, 16 S.W. 381, 384. While negligence consists of a failure to use ordinary care to avoid injury to others, ordinary care is a relative term, and its exercise requires precautions commensurate with the dangers to be reasonably anticipated under the circumstances. Stumpf v. Panhandle Eastern Pipeline Co., 354 Mo. 208, 189 S.W.2d 223, 228." Also, in the Tharp case the Supreme Court, quoting from the case of Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W. 2d 52, 55, said: " * * * Relating to those dangers to be reasonably anticipated—if there is some probability or likelihood, not a mere possibility, of harm sufficiently serious that ordinary men would take precautions to avoid it, then the failure to do so is negligence." 327 S.W.2d 893, 894.

▪ We think it is obvious in this case that defendant is chargeable with knowledge of the fire hazard inherent in the products stored in his business, Mooney v. Monark Gasoline & Oil Co., 317 Mo. 1255, 298 S.W. .69, loc. cit. 77, and further that he realized his duty to provide fire extinguishers as a necessary means of combating fire.

▪ However, defendant was not charged with. failure to provide fire extinguishers. What · we have' said is in

answer to defendant's contention that he had no duty to furnish fire extinguishers. As we pointed out, the negligence submitted to the jury was defendant's failure to provide a workable fire extinguisher. In this connection defendant contends there is no evidence to support an inference that the extinguisher was either defective or unsafe. It is further contended that there is no evidence to show the fire extinguisher did not contain "fire extinguishing material" or that an attempt was made to operate the fire extinguisher. The evidence shows that plaintiff and Overholzer knew how to operate the fire extinguishers. The evidence further shows that Overholzer had the fire extinguisher in his hands; that the way to use the fire extinguisher was to pump it with the handle provided for that purpose and that Overholzer was pumping it as required, but the fire extinguishing fluid was not being discharged. The evidence further shows there was no fluid from the extinguisher on the floor or in the box which was burning. We think the evidence just related is sufficient for the jury to find that an attempt was made to operate the fire extinguisher and that the fire extinguisher was defective in some respect and failed to function. Heretofore, we found defendant had the duty to provide adequate means for extinguishing a fire. The means provided by defendant were fire extinguishers. The duty is not discharged if non-workable or defective fire extinguishers are provided. We think defendant had a duty to keep the fire extinguishers in usable and workable condition so that they would operate when the hazard they were provided to meet, namely, fire, would occur. This he could have done through inspection. Richards v. Texas Co., 245 App.Div. 797, 280 N.Y.S. 950. The jury could have found that the fire extinguisher, if working properly, would have extinguished the fire because the evidence shows the area of the fire was very small. The evidence was sufficient to authorize a finding by the jury that defendant furnished a defective fire ex-

tinguisher and that it failed to meet the purpose for which it was provided. The evidence authorized a further finding by the jury that defendant was negligent.

In the case of Goucan v. Atlas Portland Cement Co., 317 Mo. 919, 298 S.W. 789, loc. cit. 793, the Supreme Court said: "* * * it was a continuing duty of defendants to use ordinary care to furnish the deceased with * * * reasonably safe appliances with which, to do his work, and to avoid enhancement of the natural risks of his employment. (cases cited.) The fact that the work in which the servant is engaged is inherently dangerous certainly does not absolve the master from the duty of exercising reasonable care to avoid enhancing the natural risks of his employment." The reasoning behind this rule of duty is applicable to the facts and circumstances of this case. While it is true a fire extinguisher was not an appliance used by the employee of defendant to do his work, it was an appliance needed and provided because of the danger of fire due to the inherently dangerous character of the products sold and stored on the premises. We rule that the evidence was sufficient to support the negligence submitted to the jury.

The next contention relied on by the defendant is that the evidence failed to show that the negligence relied on by the plaintiff was the direct and proximate cause of plaintiff's injuries. Defendant contends that plaintiff's injuries were not the proximate result of the defective and inoperative fire extinguisher, but were the result of an intervening cause, namely, the fire and plaintiff's movement into contact with the fire. It is difficult to follow the reasoning of defendant when he states the fire was an intervening cause. The fire was an event that preceded the alleged negligence and the plaintiff's injuries. The chain of events leading to plaintiff's injuries occurred in the following order: (1) the saturation of plaintiff's pants leg with gasoline, (2) the fire, (3) the failure

of the fire extinguisher to work, and (4) plaintiff's injuries.

In this case the jury could have found that had the fire extinguisher operated as it was supposed to, the fire would have been extinguished when plaintiff arrived on the scene, and that the failure of the fire extinguisher to work contributed to a continuance of the fire. The evidence shows that the area of the fire was very small and that plaintiff sustained his injuries when he decided to get the other fire extinguisher.

Defendant in his brief stresses the failure of the evidence to show the cause of the fire. We fail to see the relevancy of this argument. Defendant was not charged with negligently causing or permitting the fire and this line of argument has no relationship to the negligence ultimately submitted to the jury.

■ The test of whether there is a causal connection between the alleged negligence and the injury is that the facts show, absent the negligent act, the injury would not have occurred. Bowman · v. Moore, 237 Mo.App. 1163, 167 S.W.2d 675; Logan v. Wabash R. Co., 96 Mo.App. 461, 70 S.W. 734, 735. In the Logan case supra, the court, quoting from another case, said: "One of the most valued of the *criteria* furnished us by these authorities is to ascertain whether any new cause has intervened between the fact accomplished and the alleged cause. If a new force or power has intervened, of itself sufficient to stand as the cause of the misfortune, the other must be considered as too remote." In the instant case nothing intervened between the failure of the fire extinguisher to work (the alleged cause) and plaintiff's injuries. The fire preceded both events. There was a continuous succession of events present in the instant case that were all linked together to make a whole picture and the jury could have readily found that no new and independent cause intervened between the negligence and the injuries.

The general rule is that what is the proximate cause of an injury is usually a question for the jury. In the instant case it was the province of the jury to examine the succession of events and determine from them whether the negligence they found to exist was the cause of plaintiff's injuries. We rule that there was sufficient evidence of causal connection between the negligence submitted to the jury and found by it, and plaintiff's injuries to authorize a submission of that issue to the jury.

■ The final principal contention relied on by defendant is that the evidence shows plaintiff was guilty of contributory negligence as a matter of law. Defendant attempts to support this contention by asserting that plaintiff should have gone back to the office to procure the other fire extinguisher without exposing himself to the fire. The fact is plaintiff was in the act of procuring the other fire extinguisher when his pants leg caught fire. The evidence shows plaintiff's pants leg caught fire after he learned the fire extinguisher then being used would not operate and before he had an opportunity to get the other fire extinguisher.

Defendant points to plaintiff's knowledge that his pants leg had been "saturated" with gasoline and that plaintiff knew the highly combustible nature of gasoline. The evidence shows the gasoline was spilled on the trousers of plaintiff approximately fifteen minutes before he was told about the fire. The evidence further shows that plaintiff, when he ran into the filling station, did not think about the gasoline on his trousers. He said the odor of gasoline is always present around a filling station. These were the facts before the jury for their consideration.

■ Defendant next contends, in connection with the point under discussion, that plaintiff cannot avail himself of the rule that excuses contributory negligence when one acts in an emergency or amidst circumstances of confusion and excitement.

He says this is so for two reasons: (1) if there was an emergency or confusion and excitement it was caused by the fire and not by any other factor, (2) plaintiff's acts and movements in the back room were done solely for the preservation of property.

The first of the reasons given was partially answered in our discussion of the proximate cause of plaintiff's injuries. A further answer to this reason given by defendant is the jury could have found that if an emergency or confusion existed, it was caused by the failure of the fire extinguisher to work. The answer to the second reason offered by defendant can be found in the testimony of plaintiff. His testimony clearly shows that his concern was not solely for the preservation of defendant's property but that he was also concerned about the safety of the people around the filling station, stating the fire "could have caught the whole place on fire, hurt everybody around there." Plaintiff knew that highly inflammable alcohol and oil were stored in that room. The evidence shows that Overholzer, plaintiff, his sister and his girl-friend were in the filling station building at the time of the fire and that immediately adjacent to the building were nine cars with their occupants waiting to be served. All of these circumstances were known to plaintiff and "worried" him when he saw the fire and the failure of the fire extinguishers to work. From this evidence the jury could have found that plaintiff's primary concern was the peril to the lives of those present and those in the immediate vicinity.

Defendant cites in support of his position some cases which contain statements to the effect that one who voluntarily incurs danger is free from contributory negligence only when it is for the purpose of saving life, holding that this rule does not apply when the only purpose is to save property. We need not determine the correctness of this statement because in the first place we do not have a situation where plaintiff voluntarily incurred danger and,

secondly, as we pointed out, the jury had evidence from which it could find that plaintiff was concerned with the peril to the lives of those present.

We think this is a case where more than one inference may be fairly drawn from the facts as to the negligence or lack of negligence on the part of plaintiff and, therefore, the issue of contributory negligence was for the jury. This rule is so elementary it needs no citation of authority. A case not quite analogous on the facts but one in which the emergency confronting the plaintiff was similar to that confronting the plaintiff in the instant case is Booth & Flynn v. Price, 183 Ark. 975, 39 S.W.2d 717, 720, 76 A.L.R. 957. The court there, when considering the question of plaintiff's negligence, said:

"This we consider the most serious question in the case, but we do not think that it was per se negligence for a servant to be in a place of danger when his master's property was on fire and in the discharge of his duty he was trying to put it out. * * * Under the circumstances attending the present case, we do not think that it can be said that the conduct of appellee was so reckless or so unusually hazardous as to prevent the jury from allowing him a recovery. * * * Doubtless for the moment, he overlooked the fact that the gasoline had been spraying out on his clothes from the waist downwards, and that this might ignite from the flames. It is natural that he could not view the circumstances with the same coolness that anyone taking a retrospect of the occurrence could do. * * * In any event, it would seem that the jury might find that he acted with as much prudence as any reasonable man would have done under the circumstances, and that it should not be said, as a matter of law, that he acted in such a reckless manner with full realization of the unusual hazard attending

the occurrence that he should not be allowed to recover for the damages resulting from his injury."

In conclusion the court said:

"In view of all the circumstances, we do not think it can be said as a matter of law that his conduct was so unreasonable and reckless that he should be deemed to have assumed the risk as a matter of law or that he was guilty of contributory negligence as a matter of law."

The reasoning in the aforesaid case parallels our own thoughts and we conclude that the issue of plaintiff's contributory negligence was one for the jury.

██ Defendant in one of his points relied on complaints about Instruction No. 5. This point fails to comply with Supreme Court Rule 1.08, 42 V.A.M.S., in several respects. It fails to point out what required findings contained in the instruction were erroneous; what matters and conclusions not proved were submitted to the jury; and what matters were given prejudicial emphasis in the instruction. Also, the argument merely set forth fragmentary parts of the instruction from which parts the point relied on could not be readily discerned and understood. We think the various actions of the trial court attempted to be complained of in the point relied on required the instruction to be set forth in full in defendant's argument on this point. However, we have examined Instruction No. 5 and found no error in the facts required to be found by the jury; found nothing submitted that was not supported by ample proof and found no matters prejudicially emphasized. The Instruction fairly presented the facts and required findings.

Finding no error the judgment of the trial court should be affirmed. It is so ordered.

WOLFE, P. J., and ANDERSON, J., concur.